No. 24-13159

IN THE

# United States Court of Appeals
# For the Eleventh Circuit

JANE DOE,

*Plaintiff-Appellee*,

v.

CARNIVAL CORPORATION,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Southern District of Florida, Miami Division
No. 1:19-CV-24766-KMW

**OPENING BRIEF FOR APPELLANT CARNIVAL CORPORATION**

CURTIS J. MASE
WILLIAM R. SEITZ
MASE SEITZ BRIGGS
2601 South Bayshore Dr., Suite 800
Miami, FL 33133

CATHERINE E. STETSON
EZRA P. LOUVIS
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
cate.stetson@hoganlovells.com

*Counsel for Defendant-Appellant Carnival Corporation*

December 6, 2024

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant-Appellant Carnival Corporation, discloses that it is a publicly traded company whose common stock is listed on the New York Stock Exchange (CCL), and that there is no parent corporation or publicly held corporation that holds ten percent or more of its stock.

Defendant-Appellant Carnival Corporation certifies that the following persons and entities have or may have an interest in the outcome of this case:

Anggara, Fredy

Cabeza, Lauren Nicole

Carnival Corporation

Courtney, Daniel Warren

Daniel W. Courtney, P.A.

Hogan Lovells US LLP

Lempinen, Sierra

Levitt, Lauren Ashley

Louvis, Ezra P.

Mase Seitz Briggs, P.A.

Mase, Curtis Jay

Philip D. Parrish P.A.

C-1

Parrish, Philip Dixon

Rauh, Tyler Joseph

Robinson, Charlotte Ashley

Seitz, William Robert

Stetson, Catherine E.

Torres, Edwin G. (United States Chief Magistrate Judge)

Williams, Kathleen M. (United States District Judge)

## STATEMENT REGARDING ORAL ARGUMENT

This appeal comes from a trial that resulted in a substantial verdict and involves complex legal issues.  Carnival Corporation respectfully suggests that the Court would benefit from hearing oral argument by the parties.

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ...............................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF AUTHORITIES ...................................................................................v

INTRODUCTION ...................................................................................................1

JURISDICTIONAL STATEMENT .......................................................................4

STATEMENT OF THE ISSUES............................................................................5

STATEMENT OF THE CASE................................................................................5

       A.    An Alleged Sexual Assault Occurs Aboard The
           Carnival *Miracle* ......................................................................5

       B.    The FBI Conducts An Investigation And The
           United States Attorney's Office Declines
           To Prosecute...................................................................................6

       C.    Plaintiff Files Suit .....................................................................7

       D.    The District Court Grants Plaintiff Partial
           Summary Judgment .....................................................................9

       E.    A "Genuine Issue of Fact" Emerges at Trial .............................9

       F.    The District Court Declines To Reconsider Its
           Partial Summary Judgment Ruling............................................10

       G.    The District Court Excludes The FBI Reports
           At Trial .......................................................................................11

       H.    The Jury Hears That Plaintiff Was Falsely
           Imprisoned And Is Asked To Decide The "Consent"
           Element of Plaintiff's Sexual Assault Claim ............................14

## TABLE OF CONTENTS—Continued

**Page**

I.  The District Court Refuses To Provide A Mitigation Instruction And Assesses Prejudgment Interest ......................15

J.  The District Court Denies Carnival's Post-Trial Motion And Motion For Remittitur ..........................................16

STANDARD OF REVIEW ......................................................................18

SUMMARY OF ARGUMENT ................................................................20

ARGUMENT ..........................................................................................22

I.  THE DISTRICT COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF FALSE IMPRISONMENT ...........................................................22

    A.  The District Court Erroneously Excluded The Conclusions Of The FBI Reports As Hearsay ........................22

    B.  Plaintiff's Lack Of Recall Created A Dispute Of Material Fact ...............................................................................27

II. THE DISTRICT COURT COMMITTED LEGAL ERROR WHEN IT FAILED TO RECONSIDER ITS GRANT OF PARTIAL SUMMARY JUDGMENT WHEN A MATERIAL FACT DISPUTE AROSE AT TRIAL ...............................................................................30

    A.  Admission Of The FBI Notes Created A Dispute of Material Fact At Trial ..............................................................31

    B.  Maintaining Summary Judgment Was Legal Error And Caused Carnival Substantial Prejudice ............................32

    C.  The District Court's Rationale For Denying Reconsideration Lacks Merit ......................................................37

iii

## TABLE OF CONTENTS—Continued

**<u>Page</u>**

III.    THE DISTRICT COURT IMPERMISSIBLY EXCLUDED IMPEACHMENT EVIDENCE AT TRIAL.................40

IV.    THE DISTRICT COURT MADE A SERIES OF ERRORS IN ITS APPROACH TO DAMAGES .............................46

    A.    The District Court Erred In Denying A Mitigation Instruction .................................................47

    B.    The District Court Usurped The Jury's Role In Awarding Prejudgment Interest .................................50

    C.    The District Court Abused Its Discretion In Refusing To Remit The Verdict.................................52

CONCLUSION .......................................................................55

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Adams v. Ameritech Servs., Inc.*,
  231 F.3d 414 (7th Cir. 2000)......................................................26, 27

*Aills v. Boemi*,
  41 So. 3d 1022 (Fla. Dist. Ct. App. 2010) ............................................54

*\*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..........................................................27, 28, 32, 37

*Baker v. Upson Reg'l Med. Ctr.*,
  94 F.4th 1312 (11th Cir. 2024)...............................................27, 28

*Barcliff, LLC v. M/V DEEP BLUE*,
  876 F.3d 1063 (11th Cir. 2017)..........................................................49

*Barfield v. Orange County*,
  911 F.2d 644 (11th Cir. 1990)..........................................................23

*Blanton v. Univ. of Fla. ex rel. Bd. Of Trs. Of Univ. of Fla.*,
  273 F. App'x 797 (11th Cir. 2008)...............................................23, 45

*Carithers v. Mid-Continent Cas. Co.*,
  782 F.3d 1240 (11th Cir. 2015).........................................................19

*Castle v. Sangamo Weston, Inc.*,
  837 F.2d 1550 (11th Cir. 1988).........................................................33

*Caulder v. State*,
  500 So. 2d 1362 (Fla. 5th DCA 1986)...............................................36

*Chuy v. Philadelphia Eagles Football Club*,
  595 F.2d 1265 (3d Cir. 1979)..........................................................48

*Commonwealth v. Edgerly*,
  435 N.E.2d 641 (Mass. 1982)..........................................................36

\* Per Local Rule 28-1(e), authorities upon which we primarily rely are marked with an asterisk.

# TABLE OF AUTHORITIES—Continued

<u>**Page(s)**</u>

*Computer Pros. for Soc. Resp. v. U.S. Secret Serv.*,
  72 F.3d 897 (D.C. Cir. 1996) .................................................................. 35

*Conroy v. Abraham Chevrolet-Tampa, Inc.*,
  375 F.3d 1228 (11th Cir. 2004) ............................................................... 19

*\*Crawford v. ITW Food Equip. Grp., LLC*,
  977 F.3d 1331 (11th Cir. 2020) .......................................................... 23, 25

*Darby v. Carnival Corporation*,
  2021 WL 5902866 (S.D. Fla. Dec. 13, 2021) ....................................... 33

*Doe v. Celebrity Cruises*,
  2002 WL 34683586 (S.D. Fla. Nov. 22, 2002) ............................... 18, 53

*Dolsak v. Comm'r of Soc. Sec.*,
  724 F. App'x 914 (11th Cir. 2018) .................................................. 46, 47

*E. S. I. Meats, Inc. v. Gulf Fla. Terminal Co.*,
  639 F.2d 1348 (5th Cir. 1981) ................................................................ 49

*Frederick v. Kirby Tankships, Inc.*,
  205 F.3d 1277 (11th Cir. 2000) ............................................................... 47

*Gilliam v. Allen*,
  62 F.4th 829 (4th Cir. 2023) .................................................................. 50

*Goldsmith v. Bagby Elevator Co.*,
  513 F.3d 1261 (11th Cir. 2008) ............................................................... 45

*\*Good Luck Nursing Home, Inc. v. Harris*,
  636 F.2d 572 (D.C. Cir. 1980) ......................................................... 34, 35

*Goodloe v. Royal Caribbean Cruises, Ltd.*,
  1 F.4th 1289 (11th Cir. 2021) ................................................................. 19

*\*Goodman v. Kimbrough*,
  718 F.3d 1325 (11th Cir. 2013) ............................................................... 23

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n*,
  595 F.3d 1203 (11th Cir. 2010) ........................................................... 19

*Gray v. Estelle*,
  574 F.2d 209 (5th Cir. 1978) .............................................................. 34

*Great Lakes Ins. SE v. Raiders Retreat Realty Co.*,
  601 U.S. 65 (2024) ........................................................................... 51

*Havis v. Petroleum Helicopters, Inc.*,
  664 F.2d 54 (5th Cir. 1981) ................................................................ 50

*Hornady v. Outokumpu Stainless USA, LLC*,
  118 F.4th 1367 (11th Cir. 2024) ..................................................... 32, 33

*In re Louisiana Crawfish Producers*,
  852 F.3d 456 (5th Cir. 2017) .............................................................. 34

*In re Paoli R.R. Yard PCB Litig.*,
  916 F.2d 829 (3d Cir. 1990) ............................................................... 26

*Jackson v. Ala. State Tenure Comm'n*,
  405 F.3d 1276 (11th Cir. 2005) ........................................................... 34

*Kerrivan v. R.J. Reynolds Tobacco Co.*,
  953 F.3d 1196 (11th Cir. 2020) ........................................................... 52

*Lebron v. Royal Carribean Cruises, Ltd.*,
  2021 WL 2917265 (11th Cir. July 12, 2021) ........................................ 51

*Mekdeci By & Through Mekdeci v.*
  *Merrell Nat. Lab'ys, a Div. of Richardson-Merrell, Inc.*,
  711 F.2d 1510 (11th Cir. 1983) ........................................................... 30

*MidlevelU, Inc. v. ACI Info. Grp.*,
  989 F.3d 1205 (11th Cir. 2021) ........................................................... 19

*Miller v. Field*,
  35 F.3d 1088 (6th Cir. 1994) .......................................................... 24, 25

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Nevor v. Moneypenny Holdings, LLC*,
842 F.3d 113 (1st Cir. 2016) ............................................................... 47

*Newburgh Land & Dock Co. v. Texas Co.*,
227 F.2d 732 (2d Cir. 1955) ................................................................ 50

*Newman v. Ormond*,
456 F. App'x 866 (11th Cir. 2012) ...................................................... 31

*Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship*,
490 F.3d 1302 (11th Cir. 2007) .......................................................... 15

*Ornstein v. New York City Health & Hosps. Corp.*,
881 N.E.2d 1187 (N.Y. 2008) ............................................................. 48

*Proctor v. Fluor Enters.*,
494 F.3d 1337 (11th Cir. 2007) .......................................................... 19

*Reeves v. Sanderson Plumbing Prod., Inc.*,
530 U.S. 133 (2000) ............................................................................ 32

*Reichert v. Chemical Carriers, Inc.*,
794 F.2d 1557 (11th Cir. 1986) .......................................................... 51

*Robinson v. Pocahontas, Inc.*,
477 F.2d 1048 (1st Cir. 1973) ....................................................... 50, 51

*Rubinstein v. Yehuda*,
38 F.4th 982 (11th Cir. 2022) ....................................................... 46, 48

*Santos v. U.S. Atty. Gen.*,
215 F. App'x 902 (11th Cir. 2007) ...................................................... 28

*Sconiers v. Lockhart*,
946 F.3d 1256 (11th Cir. 2020) .......................................................... 28

*Shaw v. City of Selma*,
884 F.3d 1093 (11th Cir. 2018) ..................................................... 32, 37

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*,
    561 F.3d 1181 (11th Cir. 2009) ...........................................................50

*State ex rel. Dresskell v. City of Miami*,
    13 So. 2d 707 (Fla. 1943) ...................................................................47

*TDN Money Sys., Inc. v. Everi Payments, Inc.*,
    796 F. App'x 329 (9th Cir. 2019) ........................................................31

*Tessmer v. Walker*,
    833 F.2d 925 (11th Cir. 1987) .............................................................32

*Tippens v. Celotex Corp.*,
    805 F.2d 949 (11th Cir. 1986) .......................................................28, 29

*Union Pac. R.R. Co. v. Kirby Inland Marine, Inc. of Miss.*,
    296 F.3d 671 (8th Cir. 2002) ...............................................................26

*United States ex rel. Barrick v. Parker-Migliorini Int'l*,
    79 F.4th 1262 (10th Cir. 2023) ......................................................23, 25

*\*United States v. Gluk*,
    831 F.3d 608 (5th Cir. 2016) .........................................................45, 46

*United Techs. Corp. v. Mazer*,
    556 F.3d 1260 (11th Cir. 2009) .....................................................24, 25

*Willis v. Royal Caribbean Cruises, Ltd.*,
    77 F.4th 1332 (11th Cir. 2023) ............................................................52

**RULES:**

Fed. R. Civ. P. 37(c)(1) ................................................................................40

Fed. R. Evid. 403 .........................................................................................44

Fed. R. Evid. 703 .........................................................................................40

Fed. R. Evid. 705 .........................................................................................40

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

Fed. R. Evid. 801(d)(2) ............................................................25

Fed. R. Evid. 803(8)(A) ..............................................................2

Fed. R. Evid. 803(8)(A)(iii) ............................................9, 20, 22

Fed. R. Evid. 803(8)(B) ............................................................26

**OTHER AUTHORITIES:**

1 T. Schoenbaum, Admiralty & Mar. Law § 6:18 & n.45 (6th ed. 2024) .........50, 51

*Consent*, 2 Wharton's Criminal Law § 25:6 (16th ed. 2021) ..................................36

John Campbell et al., *Countering the Plaintiff's Anchor: Jury Simulations to Evaluate Damages Arguments*, 101 IOWA L. REV. 543 (2016) ...................52, 53

## INTRODUCTION

This is a maritime sexual assault case tried to a jury. These cases are delicate, and the subject matter warrants appropriate care. But like any other legal proceedings, Carnival was entitled to a fair opportunity to present a defense. And the jury was entitled to consider the case based on all the facts—legal guarantees that the District Court failed to uphold in this case.

Plaintiff sued Carnival in federal district court for false imprisonment, sexual assault, and negligence. She claimed that, while "blackout drunk" and playing "hide and seek" aboard a Carnival cruise ship, a crewmember brought her into a storage closet without her consent and sexually assaulted her.

The day after the incident, FBI Special Agents interviewed Plaintiff, the crew member, and security personnel. The FBI interviews are summarized in two reports that contain the following investigative conclusion: "[T]he encounter was consensual at the time of the event." Doc. 111-4 at 1.

That conclusion formed a key part of Carnival's defense throughout this case—a defense that centered on the consent element common to Plaintiff's false-imprisonment and sexual assault claims. But a cascading series of errors prejudicially undermined Carnival's ability to present that defense.

The trouble began before trial, when the District Court granted partial summary judgment to Plaintiff on her false-imprisonment claim. It did so on the

1

basis that Carnival had purportedly adduced "nothing tangible" to rebut Plaintiff's testimony. Doc. 151 at 10. Carnival challenged that testimony based on Plaintiff's inability to recall key events. Carnival had also presented the FBI's reports—undoubtedly "tangible" evidence—but Plaintiff argued that they contained inadmissible hearsay derived from the FBI's interviews. The District Court agreed and refused to consider those documents in their entirety—despite the express exception to the hearsay rule for "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A). Moreover, in crediting Plaintiff's recollection despite lapses in memory, the court resolved a credibility dispute against the non-movant—which the summary judgment standard does not permit. Those hornbook errors warrant reversal and a new trial.

But the problems continued. With summary judgment on the false-imprisonment claim in hand, Plaintiff's counsel made an about-face at trial, seeking to *admit* information from those same FBI interviews to support her sexual assault claim. As the District Court put it, Plaintiff "inexplicably introduced this evidence" by stipulating to the admissibility of the FBI Special Agents' notes at trial. Doc. 362 at 6. "Inexplicable" was apt: Plaintiff had introduced the very evidence "whose exclusion as inadmissible hearsay was the problem" prompting the Court's "grant of summary judgment." *Id.* at 7.

The District Court recognized what had occurred the moment it happened: The dispute of fact that the court found absent at summary judgment was now evident, and in the record. Yet the court denied Carnival's motion to reconsider the previous summary judgment on the grounds that reconsidering that ruling mid-trial would "prejudice" Plaintiff. That too was error. The court identified a material fact dispute, yet decided summary judgment was appropriate. And its decision set the jury on a path to a Plaintiff's verdict: With the summary judgment on Plaintiff's false-imprisonment claim undisturbed, the jury was told that the court had already ruled that Plaintiff had been held without her consent. So, it was to no one's surprise that the jury took the logical next step, reaching the same conclusion on the consent element of her sexual assault claim even while it returned a verdict for *Carnival* on Plaintiff's negligence claim.

The erroneous summary judgment ruling had further knock-on effects at trial. It turned out that two of Plaintiff's experts had relied upon the FBI reports in forming their opinions. But Carnival was precluded from cross-examining the experts on those reports, and from impeaching the experts with the FBI's conclusion. One expert failed to disclose her reliance on the reports until mid-trial. And the District Court prevented Carnival from examining either expert about the reports, even for the limited purpose of understanding the basis of their expert opinions. These

3

constraints further compounded the unfair prejudice to Carnival and rendered the trial profoundly unjust.

To top it off, the District Court made a string of missteps in its approach to damages. First, Carnival sought a mitigation instruction based on Plaintiff's failure to seek timely medical care. The District Court denied that request by minting a rule that mitigation does not apply to "emotional distress" damages. Doc. 320 at 19. Second, the court awarded prejudgment interest in the face of a body of admiralty case law instructing that the fact-finder—here, the jury—must decide the full measure of damages. Third, the court refused to remit the verdict even after examining multiple similar cases, all with damages awards less than half the award in this case. Each decision is independently wrong. And any one of them is an appropriate basis for right-sizing the verdict on remand.

These errors denied Carnival a fair opportunity to present a defense—which, at bottom, is all Carnival seeks. Plaintiff will still have her day in court even if the Court agrees with Carnival on all fronts. It must just be a day where the jury can consider all the issues properly before it.

## JURISDICTIONAL STATEMENT

Plaintiff is a citizen of Washington State. Doc. 1 at 1. Carnival is a Florida Corporation. *Id.* The District Court exercised jurisdiction under 28 U.S.C. §§ 1332 and 1333. The District Court entered final judgment disposing all claims on August

30, 2024.  Doc. 400.  Carnival filed a notice of appeal on September 26, 2024.  Doc. 402.  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether the District Court erred in granting partial summary judgment on the issue of false imprisonment.

2.      Whether the District Court committed legal error in failing to reconsider that summary judgment when a material dispute of fact emerged at trial.

3.      Whether the District Court's evidentiary rulings prevented Carnival from effectively presenting a defense.

4.      Whether the District Court committed legal error in denying a mitigation instruction on the grounds that mitigation does not apply to claims for noneconomic damages.

5.      Whether the District Court committed legal error in awarding prejudgment interest when the issue was not submitted to the jury.

6.      Whether the District Court abused its discretion in refusing to remit the verdict.

## STATEMENT OF THE CASE

**A.      An Alleged Sexual Assault Occurs Aboard The Carnival *Miracle*.**

Plaintiff claimed that she was "blackout drunk" and playing "hide and seek" with a friend aboard Carnival's *Miracle* cruise ship when Fredy Anggara, a

crewmember, confined her in a storage closet and sexually assaulted her. Doc. 95-1 at 100, 120–124; Doc. 319 at 235, 244. Plaintiff could not recall entering the closet, and she could not recall whether she consented to sexual relations with Anggara. Doc. 319 at 235, 236–237. Plaintiff's friend did not witness these events. Doc. 95-3 at 78–79.

### B. The FBI Conducts An Investigation And The United States Attorney's Office Declines To Prosecute.

The FBI responded to the incident the next day and conducted a fact-finding investigation. In the course of that investigation, FBI Special Agents Sarah Andreasen and William Ortiz conducted in-person interviews of several individuals including Plaintiff, Anggara, Plaintiff's friend, and the vessel's Chief Security Officer. Doc. 111-2.

Special Agent Andreasen took handwritten notes on the interviews with Plaintiff and Anggara (the "FBI Notes"). Doc. 312-26. Andreasen's FBI Notes reflect Plaintiff's account that she was drinking heavily prior to the incident, ran away from her friend, and ended up in a closet with a man. *Id.* at 2. Among other things, the FBI Notes state that Plaintiff "was being playful before that point and may have asked [Anggara] for help hiding." *Id.* at 4. Once inside the closet, Plaintiff recalled Anggara pulling her pants down and looking back to see Anggara ejaculating. *Id.*

The FBI Notes went on to record Special Agent Andreasen's interview with Anggara. Anggara saw Plaintiff running and advised her to slow down because the floor was wet. *Id.* According to the FBI Notes, Anggara stated that he opened the storage closet to put away cleaning equipment, and that Plaintiff "took his hand," followed him in, asked him to close the door, and asked him to stay with her. *Id.* at 7. He recalled that, while inside the closet, Plaintiff "held his hand," "hugged him," and "masturbated him." *Id.* at 8. The FBI Notes also reflect Anggara's statement that, as Plaintiff and Anggara exited the closet, Plaintiff "pulled his hand," "kissed him," and said " 'Thank you for everything.' " *Id.* at 10.

The results of the FBI's investigation are memorialized in two records titled "Investigation into alleged sexual misconduct aboard the Carnival Cruise Ship 'Miracle' " and "Liaison with Carnival Cruise Ship Miracle Security Officer Vikram Singh" (together, the "FBI Reports"). Docs. 111-2, 111-4. Relying on the FBI Notes, the FBI Reports recount the agents' various interviews. The Reports also reach a conclusion: "[T]he sexual encounter was consensual at the time of the event." Doc. 111-4 at 1. The Reports go on to note that the U.S. Attorney's Office for the Middle District of Florida declined to prosecute Anggara. Doc. 111-2 at 4.

## C.    Plaintiff Files Suit.

Plaintiff sued Carnival a year later, alleging false imprisonment, sexual assault, and negligence. Doc. 1. At the close of discovery, the Parties cross-moved

for partial summary judgment, with Plaintiff seeking judgment on her false-imprisonment claim.  Doc. 92.

A key issue at summary judgment was whether Plaintiff was held in the closet against her will—an element of false imprisonment under Florida law.  Plaintiff testified in her deposition that she was pulled into the closet, that she felt threatened, and that she may have seen Anggara's hand on the door.  Doc. 92 at 2; Doc. 93 at 2. Carnival responded that issue was at least disputed.  It cited the FBI Reports, including their conclusion that the ultimate encounter "was consensual," in addition to Plaintiff's inability to recall critical details about the encounter like how she ended up in the closet.  Doc. 111 at 2.

A magistrate judge issued a Report and Recommendation (R&R) recommending summary judgment in Plaintiff's favor.  Doc. 151.  Its conclusion turned on the FBI Reports.  The magistrate judge recognized that the FBI Reports could be admissible under the "public records exception" to the hearsay rule.  *Id.* at 7.  But it nevertheless excluded the Reports in their entirety because they contained the statements of Plaintiff and Anggara, which, in its view, rendered portions of the Reports double hearsay.  *Id.* at 8.  As the R&R explained: "Now that the hearsay statements from the FBI report must be excluded, we are left with nothing tangible to find a genuine issue of fact remains for trial" on Plaintiff's claim of false imprisonment.  *Id.* at 10.

8

### D.     The District Court Grants Plaintiff Partial Summary Judgment.

In its objections to the R&R, Carnival challenged the exclusion of the FBI Reports. Doc. 153.  Carnival explained that, even if the *Reports* contained some inadmissible double hearsay, the FBI's own *conclusions* were admissible under the hearsay exception for "factual findings from a legally authorized investigation." *Id.* at 8–9; Fed. R. Evid. 803(8)(A)(iii).  Carnival also explained that Plaintiff's inability to recall critical details about the encounter also created a material fact dispute as to her credibility. *Id.* at 4–5.

The District Court adopted the R&R in full.  Doc. 197.  Its two-page order offered no reasoning and did not specifically address Carnival's objections.  The result:  Carnival was barred from contesting "its prima facie vicarious liability" for the alleged "period of false imprisonment" at trial. *Id.*  This is the same "period" in which Plaintiff claimed she was sexually assaulted.

### E.     A "Genuine Issue of Fact" Emerges at Trial.

The evidentiary landscape unexpectedly shifted at trial, however.

With summary judgment on the false-imprisonment claim in hand, Plaintiff's counsel made an about-face, seeking to *admit* the FBI Notes into the trial record as a stipulated exhibit.  Doc. 154 at 3; Doc. 317 at 4 (admitting the Parties' joint exhibits into evidence).  Plaintiff's counsel freely acknowledged what had prompted his strategy:  He believed he could leverage the FBI Notes in Plaintiff's favor "in

reliance that I already have the false imprisonment claim." Doc 320 at 15; 6/15/22 Tr. at 6. Carnival, in other words, could not rely on the FBI Notes—or any other evidence for that matter—to "challenge" its false-imprisonment liability at trial. Doc. 197 (adopting the R&R).

The District Court, however, recognized exactly what had occurred: Admitting the FBI Notes into evidence created the very dispute of fact Plaintiff had successfully suppressed at summary judgment. As the District Court put it, there were now "two accounts" of what happened that night; "meaning, there is an issue of fact which was not present" at the summary judgment stage. Doc. 320 at 18. Indeed, the District Court observed that it did not "know how much more diametrically opposed" Plaintiff's and Anggara's accounts could get, "in terms of [a] genuine issue of fact." *Id.* at 16.

## F. The District Court Declines To Reconsider Its Partial Summary Judgment Ruling.

Because a "genuine issue of fact" now existed in the record, *id.*, Carnival renewed its motion to reconsider the District Court's summary judgment ruling. The timing of this late-breaking fact issue was propitious in at least one respect; the fact issue arose, and Carnival's reconsideration motion came in, *before* the close of Plaintiff's case, meaning the parties could still try the false-imprisonment claim to the jury. The District Court recognized as much, suggesting that Plaintiff could call additional witnesses and could go back on the stand herself to address any concern

10

that she "hadn't been able to . . . speak to the issue." *Id.* at 16, 21. The jury—unaware of the summary judgment ruling—would have been none the wiser.

And yet. Despite recognizing that the admission of the FBI Notes created a "genuine issue of fact," *id.* at 16, and despite offering a practical course correction Plaintiff could implement prior to the close of her case, *id.* at 16, 21, the District Court *denied Carnival's reconsideration motion.* Reconsideration, it reasoned, "would be prejudicial to the plaintiff" because Plaintiff's counsel "designed his case around this issue, thinking it had been resolved." *Id.* at 70.

On its own accord, the District Court also altered the jury instruction on false imprisonment. The initial version instructed the jury that the District Court "h[ad] determined . . . that Carnival is responsible for the false imprisonment of Plaintiff" and that the "only remaining issue to determine" was whether "the false imprisonment caused [Plaintiff] damages." Doc. 241 at 17. The District Court removed the language about Carnival being "responsible for the false imprisonment" "in light of . . . the arguments in the case." Doc. 320 at 71. It nevertheless instructed that Plaintiff had been subject to false imprisonment, defined as "unlawful restraint of a person against their will." *Id.*

### G.    The District Court Excludes The FBI Reports At Trial.

Consistent with its summary judgment ruling, and over Carnival's objection, the District Court excluded the FBI Reports in their entirety prior to trial. Doc. 233.

11

The District Court took the view that the Reports constituted "hearsay," and that both the "determinations and statements made in those reports—*including the FBI's conclusions*"—would not be admitted.  Doc. 233 (emphasis added).

That critical ruling had knock-on effects throughout the trial, limiting Carnival's ability to cross-examine key witnesses.

Those effects started with Plaintiff's security expert, Lance Foster, who relied on the FBI Reports in forming his opinion.  When Carnival attempted to question Foster about his reliance on the FBI Reports, the Court cut off the cross examination: "No, you're not going to do that, Mr. Seitz.  I am not going to allow that."  Doc. 317 at 150–51.  The court clarified that its ruling not only precluded Carnival putting the Reports "into evidence," *id.* at 150, but also precluded mention of the FBI's conclusion for any purpose, *id.* at 154.  The court did this despite Foster's testimony that he had *assumed* Plaintiff "was sexually assaulted" in rendering his opinion that the assault was "foreseeable and preventable."  *Id.* at 137.

That ruling set the bar for examination of Plaintiff's damages expert, Dr. Sheri Surloff.  Dr. Surloff played a key role in Plaintiff's case; she knit together several facts bearing on the critical question of consent.  For example, Plaintiff testified at trial that she did not recall basic facts about her encounter with Anggara, including whether she asked Anggara for help hiding from her friend and whether she consented to any activity in the closet.  Doc. 319 at 235–37.  Dr. Surloff bolstered

that testimony, opining that lapses in memory could be consistent with a sexual assault having occurred. *Id.* at 148.

On cross-examination, Dr. Surloff revealed for the first time that she *also* relied on the FBI Reports in formulating her expert opinion—a fact never disclosed pretrial. *Id.* at 86–91 (stating her report drew from "the comments that [Anggara] must have provided to the FBI"). Despite her reliance on the Reports—including several instances where she simply "repeated what was written in the report[s]" or "repeated exactly what [Anggara] said," *id.* at 87, 89–90, Carnival was not permitted to ask Dr. Surloff about them. Dr. Surloff did not bring the FBI Reports with her—notwithstanding a trial subpoena duces tecum—and could not recall their contents. *Id.* at 86–88, 100. And Carnival was prohibited from impeaching Dr. Surloff with the FBI Reports' contrary conclusion. The court's evidentiary rulings on the Reports, both *in limine* and at trial, made it clear they would not be admitted even for purposes of impeachment. Doc. 233; Doc. 317 at 25 (directing Carnival not to "bring it up" in reference to the Reports' conclusion); *id.* at 150–155.

When Carnival later moved to admit the FBI Reports to facilitate examination of Special Agent Andreasen, the District Court—for the first time, days into trial—offered an alternative rationale for excluding them. Doc. 320 at 66–67. The District Court explained that it had "done a 403 balancing test with regard to the content" of the Reports and determined that the FBI Reports' conclusion that the encounter was

13

consensual would be "more prejudicial than probative" to the jury. *Id.* at 67. The court had never raised Rule 403 concerns in its prior rulings about this evidence. *See* Docs. 151, 233.

### H. The Jury Hears That Plaintiff Was Falsely Imprisoned And Is Asked To Decide The "Consent" Element of Plaintiff's Sexual Assault Claim.

The impact of the District Court's summary judgment ruling became crystal clear at closing. As Plaintiff's Counsel explained to the jury: "There's a false imprisonment count, which has already been decided. The Judge will read to you that: 'False imprisonment' is defined as the unlawful restraint of a person against their will . . . The only issue for your determination is whether the false imprisonment caused Plaintiff's damages." Doc. 320 at 101–102. Counsel made sure the jury got the message: "She was falsely imprisoned in that closet. She did not have the freedom to leave." *Id.* at 102. Mere seconds later, Counsel explained that lack of "consent" was also an element of Plaintiff's sexual assault claim. *Id.*

The jury obliged. It awarded damages for false imprisonment, as directed. Doc. 307 at 1. And on the next line of the verdict form, the jury agreed that Anggara had sexually assaulted Plaintiff. *Id.* The jury found for *Carnival*, however, on Plaintiff's negligence claim. *Id.*[1]

---

[1] Plaintiff has not cross-appealed the jury's verdict on her negligence claim. *Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship*, 490 F.3d 1302, 1309 (11th Cir. 2007) (party forfeited challenges to portions of verdict that it "did not cross-appeal").

14

I.     **The District Court Refuses To Provide A Mitigation Instruction And Assesses Prejudgment Interest.**

The District Court also made two critical rulings regarding damages.

Plaintiff sought over sixty million dollars in damages at trial, the vast portion of which was for past and future mental anguish and post-traumatic stress disorder (PTSD). Doc. 320 at 106. Plaintiff grounded her request in testimony that she contemplated suicide some time after the encounter, experienced flashbacks, and had trouble sleeping. Doc. 319 at 223–224. By the time of trial, however, Plaintiff had given birth to a son. *Id.* at 222–223. She testified that she was in a happy romantic relationship with her son's father, planned to have another child, to start a professional career, and to "move forward and be a good mom." *Id.* at 224, 226.

Plaintiff also sought medical care on an inconsistent basis prior to trial. She first sought psychiatric treatment a year after the incident, *id.* at 249–50, and then only twice afterwards. *Id.* at 250; Doc. 312-57 at 6. Plaintiff stated that she also sought remote treatment through an application that offered online mental health assistance but did not provide supporting documentation. Doc. 319 at 234, 251.

Moreover, Dr. Surloff—Plaintiff's expert—testified that Plaintiff had been diagnosed with obsessive-compulsive disorder and depression before the cruise. *Id.* at 103. In fact, as Dr. Surloff explained, Plaintiff had suffered PTSD symptoms as recently as two weeks before the cruise due to "a series of traumas" in her life. *Id.*

at 107–08.  Dr. Surloff added that Plaintiff previously exhibited a tendency to self-harm and had attempted suicide multiple times in her youth.  *Id.* at 97, 103.

On the basis of this collection of information, Carnival contended that the jury should have considered whether Plaintiff had "any reasonable opportunity" to " 'mitigate' [her] damages."  Doc. 241 at 24.  But the District Court refused to instruct the jury on mitigation because it had "seen nothing about mitigation as to emotional distress" in the case law.  Doc. 320 at 19.  Anchored by Plaintiff's $60 million request, the jury awarded $10 million for past and future pain and suffering, and $243,000 in medical expenses.  Doc. 307 at 2.

After trial, Plaintiff moved for an award of prejudgment interest.  Doc. 321. Up to that point, the issue had not been discussed, and it was not presented to the jury.  In response, Carnival pointed to case law holding that prejudgment interest in admiralty cases must be assessed by a jury.  Doc. 322.  The District Court awarded prejudgment interest anyway.  Docs. 390, 399.

## J.    The District Court Denies Carnival's Post-Trial Motion And Motion For Remittitur.

Carnival filed motions for a new trial and for remittitur.  Docs. 329, 342. Several aspects of those motions are relevant to this appeal.

*First*, Carnival explained that maintaining summary judgment in the face of an open fact dispute at trial caused it substantial prejudice.  Doc. 329 at 12–16.  When the FBI Notes came into evidence and created an acknowledged "genuine issue of

16

fact," Doc. 320 at 16, summary judgment became improper (to the extent it was proper in the first instance). At that point, the District Court should have granted reconsideration and permitted the parties to litigate the false-imprisonment issue and the jury to decide the case "based on all the facts." Doc. 329 at 17 (quotation marks omitted). Yet the District Court rejected Carnival's reconsideration request and maintained to the jury that Plaintiff had been held against her will—leaving the jury to take the only logical path available as to the sexual assault claim, finding Plaintiff did not consent to her "encounter in the closet, either." *Id.* at 20.

*Second*, Carnival explained that a new trial was warranted based on the wholesale exclusion of the FBI Reports at trial. *Id.* at 23–31. Because Plaintiff's experts relied on the Reports in forming their opinions, the Reports should have been admissible for the limited purpose of impeachment on cross-examination. *Id.* at 18. Carnival explained that even if a portion of the FBI Reports contained third-party hearsay, the Reports' conclusions were admissible under the public records exception. *Id.* at 24–25.

*Third*, Carnival challenged the denial of a mitigation instruction, given that the failure to seek adequate medical care is an established ground for instructing the jury on mitigation. Carnival cited multiple cases permitting mitigation defenses in cases involving emotional distress damages—refuting the District Court's statement that mitigation did not apply in that context. *Id.* at 31–33.

17

The District Court rejected Carnival's post-trial motion. *See generally* Doc. 362.

In its separate motion for remittitur, Carnival argued that the jury's $10-million-plus verdict bore no relationship to the evidence presented. Among other things, it explained that the symptoms underlying Plaintiff's damages claim arose prior to the cruise. Doc. 342 at 3. And Carnival noted that, in an analogous maritime sexual battery case, a jury had awarded $1 million in compensatory *and* punitive damages—roughly $1.6 million in 2022 dollars. *Id.* at 7 (citing *Doe v. Celebrity Cruises*, 00-cv-02523, 2002 WL 34683586 (S.D. Fla. Nov. 22, 2002)).

The District Court acknowledged that it found the remittitur motion "difficult." Doc. 362 at 9. It found Plaintiff's cases supporting verdicts in the tens of millions "readily distinguishable." *Id.* It also cited a few other sexual assault verdicts ranging between $3 and $6 million. *Id.* But even after surveying that range of awards—at most half of this jury's verdict—it determined there was "nothing to suggest at this point that $10 million is not, in fact, the outside range of an appropriate damage award." *Id.* at 11.

This appeal followed.

## STANDARD OF REVIEW

The Court reviews *de novo* a grant of summary judgment. *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1245 (11th Cir. 2015). It also reviews jury

instructions *de novo* to determine whether they misstate the law or mislead the jury. *MidlevelU, Inc. v. ACI Info. Grp*., 989 F.3d 1205, 1215 (11th Cir. 2021) (citing *Conroy v. Abraham Chevrolet-Tampa, Inc*., 375 F.3d 1228, 1233 (11th Cir. 2004)).

The Court reviews for abuse of discretion the denial of motions for reconsideration, for a new trial, and for remittitur, *Goodloe v. Royal Caribbean Cruises, Ltd*., 1 F.4th 1289, 1292 (11th Cir. 2021); rulings regarding the scope of cross-examination; and evidentiary rulings, *Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n*, 595 F.3d 1203, 1210 (11th Cir. 2010). A trial error warrants a new trial if the error affected a party's "substantial rights"—meaning if it "had a substantial influence on the jury's verdict." *Proctor v. Fluor Enters.*, 494 F.3d 1337, 1352 (11th Cir. 2007) (quotation marks omitted).

## SUMMARY OF ARGUMENT

**I.A.**  The District Court erred by granting partial summary judgment to Plaintiff on her false-imprisonment claim.  To reach that result, the  court excluded as hearsay the FBI's conclusion that the incident was consensual.  But an express exception to the hearsay rule exists for "factual findings from a legally authorized investigation."  Fed. R. Evid. 803(8)(A)(iii).  The FBI Reports' conclusion gave rise to a disputed fact issue.

**I.B.**  Beyond that evidentiary error, the District Court impermissibly resolved a second fact dispute focused on Plaintiff's credibility.  Credibility issues such as memory lapses and inconsistent testimony are the province of a jury, not a court.  Yet the court credited Plaintiff's "undisputed recollection" of events.  That, too, was legal error.

Either error is reason enough to reverse and remand for a new trial.

**II.**  The District Court erred again as a matter of law when it refused to reconsider summary judgment when a fact dispute arose at trial.  As the court recognized, Plaintiff's introduction of the FBI Notes at trial created "two accounts" of what happened that night; "meaning, there is an issue of fact which was not present" at the summary judgment stage.  Doc. 320 at 18. The court's decision to maintain summary judgment anyway was legal error.  The summary judgment standard presents a go/no-go inquiry whenever a fact dispute arises:  If a genuine

and material dispute exists, summary judgment will not lie.  Revisiting a judgment is proper where, as here, crucial evidence emerges at trial.

The District Court reasoned that Plaintiff would be prejudiced by reopening the summary judgment.  That was wrong.  There is no prejudice exception to the summary judgment standard.  Even if there were, Plaintiff had ample opportunity to present additional evidence before the close of her case.  And Plaintiff's choice to introduce conflicting evidence, previously held inadmissible, belies her claimed reliance on the District Court's prior order.  The court's finding that Plaintiff had been restrained against her will substantially prejudiced Carnival at trial by creating a throughline to the distinct consent element of Plaintiff's sexual assault claim.

**III.**  The exclusion of the FBI Reports also prejudicially damaged Carnival's ability to present a defense on Plaintiff's sexual assault claim.  Plaintiff's experts— who filled key gaps in her recollection and testimony—relied on the FBI Reports to form their opinions.  But Carnival was not able to cross-examine either expert on the Reports.  One expert had failed to disclose her reliance on the Reports until trial.  Yet the court made clear as to both experts that it would not admit the Reports or allow any to reference them, even for the limited purpose of impeachment.

**IV.**  The District Court also made three errors in its approach to damages.  First, it denied Carnival's request for a mitigation instruction by minting a new rule that mitigation was not applicable to psychological damages claims.  Second, it

awarded prejudgment interest despite a body of admiralty case law holding that any such award was a question for the jury. And third, it refused to remit the verdict to the outer limit established by the evidence.

The judgment should be reversed and the case remanded for a new trial on Plaintiff's false-imprisonment and sexual assault claims.

## ARGUMENT

## I.    THE DISTRICT COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF FALSE IMPRISONMENT.

The District Court granted partial summary judgment on Plaintiff's false-imprisonment claim, finding "nothing tangible" to rebut Plaintiff's testimony. Doc. 151 at 10. That was wrong twice over. Hornbook evidentiary law required the court to consider the FBI's conclusion that the encounter was consensual. And Plaintiff's lack of recall created a dispute of fact as to her credibility. Either dispute is grounds to reverse and remand for a new trial.

### A.    The District Court Erroneously Excluded The Conclusions Of The FBI Reports As Hearsay.

The rule against hearsay does not apply to public records that set out "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii). Such evidence will not be excluded by the rule unless "the opponent" shows that the evidence is untrustworthy. *Id.* 803(8)(B).

Federal agency "investigative reports and determinations" are among those records admissible under the public records exception, often to "highly probative" effect. *Barfield v. Orange County*, 911 F.2d 644, 649 (11th Cir. 1990). So are FBI "302 Report[s]"—the standard investigative documents created by an FBI Special Agent based on interviews with witnesses on the scene—among other similar records. *United States ex rel. Barrick v. Parker-Migliorini Int'l*, 79 F.4th 1262, 1274 (10th Cir. 2023) (collecting cases); *see also Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1347–48 (11th Cir. 2020) (OSHA reports); *Blanton v. Univ. of Fla. ex rel. Bd. Of Trs. Of Univ. of Fla.*, 273 F. App'x 797, 804 (11th Cir. 2008) (per curiam) (EEOC determinations).

As this Court has explained, the findings of those reports are admissible even if portions of the document contain hearsay. *Goodman v. Kimbrough*, 718 F.3d 1325, 1333 (11th Cir. 2013). While "statements of third-parties" in an "investigative report" are "double hearsay" that must fall under a separate exception or exclusion to be admitted, the "*conclusions* drawn in the report itself" are subject to a single level of hearsay and are thus "admissible under the public records exception to the hearsay rule." *Id.* at 1333 n.2 (emphasis added).

Where hearsay appears throughout a document, courts proceed statement-by-statement and admit "only the parts of the reports that fall under the exceptions to the hearsay rule." *Crawford*, 977 F.3d at 1348. In *Miller v. Field*, for example, the

23

Sixth Circuit examined a police report "summariz[ing] an interview" with third parties and relating a local prosecutor's conclusion that the case "would not be charged." 35 F.3d 1088, 1089 (6th Cir. 1994). The court of appeals excluded as third-party hearsay "the statements of the victim . . . and various witnesses" in the interview report. *Id.* at 1091. But it recognized that certain information, including the "conclusion of the police investigation" and the prosecutor's decision "not to press charges," were "certainly obtained through firsthand information" and therefore admissible. *Id.* That analysis comports with the "well established" proposition that "entries in a police report which result from the officer's own observations and knowledge may be admitted" even if "statements made by third persons under no business duty to report may not." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009) (citing *Miller*, 35 F.3d at 1091).

The FBI Reports at issue in this case consist of two documents: The first contains a summary of relevant witness interviews and recites the fact that the U.S. Attorney's Office's declined to prosecute, Doc. 111-2, and the second contains the FBI's finding that "the sexual encounter was consensual at the time of the event," Doc. 111-4. Neither document is a "mere collection of statements from witnesses"; rather, the Reports contain "findings" and facts—like the FBI's finding of a consensual encounter and the fact the U.S. Attorney's Office declined to prosecute— "that are based upon the knowledge or observations of the preparer of the report."

*Mazer*, 556 F.3d at 1278*; accord Crawford*, 977 F.3d at 1348; *Barrick*, 79 F.4th at 1274.  Thus, the Reports—and at least their findings—are admissible under Rule 803.

The District Court, however, excluded the FBI Reports in their entirety.  Docs. 151, 153.    That    was    error.     The    Chief    Magistrate    Judge's    report    and recommendation—adopted in full by the District Court—recognized that an "agent's own statements or observations" are admissible under the public records exception. Doc. 151 at 8.  But contrary to this Court's instructions, the judge failed to parse the document for such statements.  *See Crawford*, 977 F.3d at 1348; *Mazer*, 556 F.3d at 1278. [2]  Instead, the magistrate judge excluded the Reports because they contained "third party statements."  Doc. 151 at 8.

The District Court doubled down on this ruling at the *in limine* stage, while even at the same time repeatedly recognizing that the FBI Reports contained the agents' "conclusions," in addition to third-party hearsay.  *See, e.g*., Doc. 233 ("Given that the aforementioned FBI reports constitute inadmissible hearsay . . . the FBI's conclusions regarding the Subject Incident . . . will not be presented to the jury . . . ."); Doc. 320 at 24 ("You cannot under any circumstances share with the jury any conclusions, the declination of prosecution from the U.S. Attorney's Office, or

---

[2] It similarly failed to recognize that *Plaintiff's* statements reflected in the Reports were non-hearsay statements of a party opponent.  Doc. 128 at 2 (citing Fed. R. Evid. 801(d)(2)).

the finding of consensual encounter."). Those findings and conclusions, however, are *precisely* the type of statements that are admissible under the public records exception. *See Miller*, 35 F.3d at 1089.

This overly categorical application of the hearsay rule was the only ground the magistrate judge and the District Court offered for excluding the FBI Reports before trial. The District Court at no point called into doubt the Reports' trustworthiness, either. *See* Fed. R. Evid. 803(8)(B); *Union Pac. R.R. Co. v. Kirby Inland Marine, Inc. of Miss.*, 296 F.3d 671, 679 (8th Cir. 2002) (noting that the mere fact that "investigators relied on hearsay evidence to reach their conclusions does not mean that the preparation of the report was untrustworthy").

On trial day six, however, the District Court offered a different basis for excluding the FBI Reports: It announced that it had "done a 403 balancing test" and had determined that the FBI Reports' conclusion that the encounter was consensual would be "more prejudicial than probative." Doc. 320 at 67. The court offered this reasoning all on its own without a contemporaneous objection from Plaintiff.

The court did not purport to backfill its summary judgment ruling with this new rationale. Nor could it have. "Rule 403 is a trial-oriented rule." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (footnote omitted). A court "cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes" at summary judgment, nor is any harm "done by admitting it at that stage." *Id.*

Excluding evidence on Rule 403 grounds at the pretrial stage is thus "an extreme measure that is rarely necessary." *Id.* Rather, "the balancing process contemplated by that rule is best undertaken at the trial itself." *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2000). As explained *infra* pp. 46–48, the court erred when it applied Rule 403 at that later stage. But even if it did not, this Court should not transpose Rule 403 analysis to the summary judgment stage.

Exclusion of the FBI Reports in itself warrants reversal and remand for a new trial. Summary judgment rested on the purported lack of evidence to rebut Plaintiff's testimony. Doc. 151 at 10. The Reports and their conclusions would no doubt have provided something "tangible" to dispute that account. *Id.*

**B.    Plaintiff's Lack Of Recall Created A Dispute Of Material Fact.**

After excluding the FBI Reports, the magistrate judge pointed to Plaintiff's "undisputed recollection" of events inside the closet to conclude that no dispute of material fact existed as to false imprisonment. Doc. 151 at 10. But that conclusion is wrong even on its own terms. Plaintiff's recollection was shaky. And her inability to recall key details created a separate fact dispute that barred summary judgment in her favor.

The summary judgment standard favors the non-movant. Where, as here, the movant "has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact" with "credible evidence." *Baker v.*

*Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024) (quotation marks omitted) (emphasis in original). "If reasonable minds could differ as to the import of the evidence" adduced by the movant, judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In that determination, the court must view "the record in the light most favorable to the nonmovant" and may "not make credibility determinations." *Baker*, 94 F.4th at 1317–18. Accordingly, if the issue at summary judgment "is one of credibility, the issue is factual, and a court cannot grant summary judgment." *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (quotation marks omitted).

The court did not view the record in the light most favorable to Carnival, the non-movant. Plaintiff's deposition testimony contained significant memory lapses on key issues. This Court has explained that "any failure of memory throughout the course of discovery create[s] an issue of credibility" as to the weight of testimony and whether it should be "credited at all." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986); *see also Santos v. U.S. Atty. Gen.*, 215 F. App'x 902, 904 (11th Cir. 2007) (noting that a witness's "lack of recall of the details of the incidents" at issue supported an "adverse credibility finding"). Among other things, Plaintiff did not recall whether she asked Anggara to help her hide from her friend. Doc. 95-1 at 100. She did not recall how she entered the closet. *Id.* at 99–100. Nor could she recall consenting to what happened inside. *Id.* at 95. Nor could she recall whether

28

Anggara locked the door, or whether she "attempt[ed] to leave the closet" and was "stopped" from doing so.  *Id.* at 125–126.

The magistrate judge's report and recommendation at first seemed to recognize that Plaintiff's lack of recall gave rise to a credibility issue, noting Plaintiff's inability to "remember how she entered or left the storage closet."  Doc. 151 at 5.  But the magistrate judge zeroed in on what he described as Plaintiff's recollection that "Ang[g]arra did not let her exit the closet after she sought to do so."  *Id.* at 10.  The magistrate judge did not cite Plaintiff's testimony to support this statement, however.  It does not resemble any specific statement Plaintiff made.  And any such statement would have itself given rise to a credibility issue, since it contradicted Plaintiff's testimony that she *could not recall* "attempt[ing] to leave the closet" or Anggara "stop[ing] her."  Doc. 95-1 at 126.  The route to summary judgment ran through that "failure of memory."  *See Tippens*, 805 F.2d at 954.  And Rule 56 required the District Court to submit that issue to a jury.

\*     \*     \*

The District Court granted partial summary judgment on the issue of false imprisonment because there was "nothing tangible" to "reject [Plaintiff]'s undisputed recollection" of events inside the closet.  Doc. 151 at 10.  The FBI Reports' contrary conclusion and the fact issue as to Plaintiff's credibility provide two tangible, genuine, and material reasons to reverse.

29

Either error warrants a new trial on the claims affected by the partial summary judgment ruling: Plaintiff's claims for false imprisonment and sexual assault. Both claims turned on the same timeline and the same series of events—and they both shared a common element in lack of consent. Proof of one claim necessarily involved proof of the other; conversely, proof of consent as to one furnished a defense to both. The jury's finding in favor of Carnival on Plaintiff's negligence claim did not turn on whether Plaintiff consented to the interaction and is thus "distinct and separable." *Mekdeci By & Through Mekdeci v. Merrell Nat. Lab'ys*, 711 F.2d 1510, 1513 (11th Cir. 1983) (quotation marks omitted). The jury's negligence verdict, moreover, is not on appeal. *Supra* p. 14 n.1.

## II. THE DISTRICT COURT COMMITTED LEGAL ERROR WHEN IT FAILED TO RECONSIDER ITS GRANT OF PARTIAL SUMMARY JUDGMENT WHEN A MATERIAL FACT DISPUTE AROSE AT TRIAL.

Plaintiff introduced new evidence at trial that created the very dispute of fact the District Court found lacking at summary judgment. Denial of the ensuing motion for reconsideration was legal error given the conceded fact dispute. And it rendered the trial manifestly unjust. The jury heard again and again that Plaintiff was detained without her consent. And presented with that refrain, the jury returned the only logical verdict on Plaintiff's claim for sexual assault: That she was touched without her consent, too.

30

### A.    Admission Of The FBI Notes Created A Dispute of Material Fact At Trial.

Recall that the District Court granted partial summary judgment on the false-imprisonment claim because there was "no evidence that the jury could rely on" to reject Plaintiff's "undisputed recollection" of events.  Doc. 151 at 10.  That all changed when Plaintiff "inexplicably introduced" the FBI Notes at trial.  Doc. 362 at 6.

The FBI Notes document Anggara's account that Plaintiff took Anggara's hand, "asked if she could enter the locker," "followed him into the locker," and "asked him to close the door."  Doc. 312–26 at 6.  They also document Plaintiff's inability to recall how she got into the storage room or whether she gave consent at any point.  *Id*. at 4–5.  As the District Court put it following admission of the FBI Notes into evidence, she did not "know how much more diametrically opposed in terms of genuine issue of fact you have than [Plaintiff's] account and then this account."  Doc. 320 at 16.  In other words, there were now "two accounts" in the record, creating "an issue of fact that was not present when [Magistrate] Judge Torres considered it" at the summary judgment stage.  *Id*. at 18.

The District Court itself recognized that it need not adhere to a prior summary judgment ruling in these circumstances.  After all, "factual development is still ongoing" and pretrial rulings—"often based on incomplete information"—"don't bind district judges for the remainder of the case."  Doc. 320 at 18 (referencing *TDN*

31

*Money Sys., Inc. v. Everi Payments, Inc.*, 796 F. App'x 329, 332 (9th Cir. 2019)).

That is because "[w]hen the evidence and the inferences may be drawn change, the issue presented changes as well." *Id.* at 12 (quoting *Newman v. Ormond*, 456 F. App'x 866, 867 (11th Cir. 2012)). Just so. At summary judgment, the District Court concluded that there was no material fact dispute left to decide. At trial, however, evidence changed to contain "an issue of fact which was not present" before. *Id.* at 18.

### B.    Maintaining Summary Judgment Was Legal Error And Caused Carnival Substantial Prejudice.

The District Court nevertheless refused to reconsider the partial summary judgment once that "issue of fact" came into the record. That violated basic principles of summary judgment. And it contravened the considerations that this Court recently set out in the context of motions to reconsider non-final judgments. *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1380 (11th Cir. 2024). The effect of that decision, moreover, substantially prejudiced Carnival.

1. Summary judgment "will not lie" if a genuine dispute of material fact exists for a jury to consider. *Anderson*, 477 U.S. at 248; *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (explaining that a "material and genuine" fact dispute will "prevent summary judgment"). Summary judgment is a go/no-go inquiry. The underlying principle—that "justice be done in light of *all* the facts"—is an "incessant command of the court's conscience" that persists throughout the case. *Tessmer v.*

*Walker*, 833 F.2d 925, 926 (11th Cir. 1987) (quotation marks omitted) (emphasis in original). Indeed, it holds both before and during trial—where the standard for judgment as a matter of law "mirrors" the summary judgment standard. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).

Thus, in assessing whether judgment remains appropriate at trial, a court "should review all of the evidence," taking care not to step into the jury's shoes. *Id.* Because partial summary judgment had been granted before trial and before the factual situation markedly changed, Carnival had to package its request as a motion to reconsider. But in sum and substance, the District Court faced the same situation it typically does when a party moves for summary judgment or judgment as a matter of law. When it decided to maintain judgment, the District Court effectively granted summary judgment a second time by refusing to send an issue of fact to the jury. That was wrong. A court cannot "substitute [its] judgment for that of [a] jury" in that manner either before or during trial. *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1559 (11th Cir. 1988).

2. Principles of reconsideration separately reinforce the District Court's error. As this Court recently explained, non-final orders may be reconsidered "at any time" prior to final judgment. *Hornady*, 118 F.4th at 1380. And this Court set down a

marker that courts "should not hesitate to revisit [a] prior ruling" when parties make a showing sufficient to revise a final judgment under "Rules 59(e) or 60(b)." *Id.* [3]

In the summary judgment context, that means reconsideration is permissible where "substantially different evidence is produced" at trial than was in the summary judgment record. *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1283 (11th Cir. 2005). And reconsideration is required when—akin to Rule 59 or Rule 60 cases—a party presents a "fact so central to the litigation that it shows the initial judgment to have been manifestly unjust." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980) (citing *Gray v. Estelle*, 574 F.2d 209, 214–215 (5th Cir. 1978)).

The scenario presented here—where a material fact dispute arises mid-trial—is a stark one. But those principles lead courts to reconsider summary judgment even in cases where parties seek to introduce previously unavailable evidence *post-judgment*. Consider *In re Louisiana Crawfish Producers*, where a party "failed to present evidence" of a key fact at summary judgment. 852 F.3d 456, 466 (5th Cir.

---

[3] The parties litigated reconsideration under a body of lower court case law holding that the Rule 59(e) and 60(b) standard applied to motions to reconsider both final and *non*-final judgments. *See, e.g.*, *Darby v. Carnival Corporation*, No. 19-CV-21219, 2021 WL 5902866, at *2 (S.D. Fla. Dec. 13, 2021). This Court recently clarified that courts should apply Rule 54(b) in such circumstances, not the "significantly higher" Rule 59/60 standard. *Hornady*, 118 F.4th at 1381. Carnival prevails under that higher standard, but even if it cannot, reconsideration is nevertheless "appropriate" under Rule 54(b). *Id.*

2017). The court of appeals concluded that the district court had abused its discretion in denying reconsideration despite "clearly probative" post-judgment evidence that "would have defeated summary judgment" but for the party's excusable failure to present it. *Id.* at 467. Or consider the D.C. Circuit's decision in *Good Luck Nursing*. The district court granted summary judgment based on stipulations about an underlying agency proceeding. 636 F.2d at 575–576. But a "previously undisclosed" fact about the proceeding "affected the propriety of its initial judgment." *Id.* Even though the "original failure to present that information was inexcusable," the "interest that justice be done was seriously at stake"—making the district court "well justified" in taking "a strong second look" even after final judgment. *Id.* at 577–578; *see also Computer Pros. for Soc. Resp. v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996) (reversing denial of reconsideration based on "previously undisclosed evidence" that "would have affected the outcome").

The District Court should not have hesitated to reconsider here, either, especially since the material evidence was already in the record *before* final judgment.

3. The partial summary judgment—and the District Court's refusal to revisit it—caused Carnival substantial prejudice. The partial summary judgment order stated that Carnival "may not challenge" its liability for false imprisonment. Doc. 197 at 1. In other words, Carnival could not contest that Plaintiff was unlawfully

restrained "against [her] will." Doc. 320 at 151 (instructing the jury on the definition of "false imprisonment"). But at trial, Carnival was called upon to defend the distinct, necessary element of Plaintiff's sexual assault claim that the sexual act was committed "without Plaintiff's consent." *Id.* at 148.

Someone who was restrained "against their will" did not "consent." Those terms are "synonymous." *Consent*, 2 Wharton's Criminal Law § 25:6 (16th ed. 2021); *see also Caulder v. State*, 500 So. 2d 1362, 1364 (Fla. 5th DCA 1986) (equating "against her will" with "without her consent"); *Commonwealth v. Edgerly*, 435 N.E.2d 641, 652 (Mass. 1982) (rejecting any distinction in the two phrases for purposes of instructing a jury). Once the District Court instructed the jury that Plaintiff was held in the storage closet "against [her] will," the jury reached the only logical conclusion available to it on Plaintiff's sexual assault claim: that she did not consent to the sexual encounter in the closet, either.

The court's decision also bolstered Plaintiff's trial testimony. Carnival elicited on cross-examination that Plaintiff could not recall asking Anggara to help her hide in the closet or whether she ever tried "to leave the storeroom." Doc. 319 at 244. And Plaintiff denied that she acted playfully prior to the encounter—contrary to the FBI Notes' and Reports' description of her interview. *Compare id.* at 260, *with* Doc. 312-26. But the partial summary judgment substantially hindered Carnival's ability to argue the weight or credibility of Plaintiff's testimony based on

36

those inconsistencies.  The effect of the court's ruling was to weigh that evidence for the jury and resolve any inconsistencies in Plaintiff's favor.

Plaintiff's change in position compounded the unfairness.  Plaintiff had successfully secured summary judgment by arguing for the exclusion of the accounts underlying the FBI Reports, maintaining that "what Mr. Anggara told the FBI" was "a perfect example of hearsay."  Doc. 114 at 2.  But at trial, Plaintiff's counsel stipulated to the admissibility of that evidence via the FBI Notes because counsel concluded portions of the Notes were helpful to Plaintiff's sexual assault claim.  6/15/22 Tr. at 6.  Plaintiff's counsel was quite candid about it all:  He stipulated to the admission of the FBI Notes "in reliance that I already have the false imprisonment claim"; he "would not have done that" otherwise.  Doc. 320 at 15.  Plaintiff thus sought to reap the strategic benefits of the partial summary judgment without the corresponding strategic cost: submitting Anggara's account of the encounter.

### C.  The District Court's Rationale For Denying Reconsideration Lacks Merit.

The District Court refused to reconsider partial summary judgment because Plaintiff's counsel "ha[d] not designed his case" to include proof on the false-imprisonment claim.  Doc. 320 at 70.  That circular rationale lacks merit for three reasons.

*First*, the summary judgment standard contains no "prejudice" exception.  It simply asks whether there was a dispute of fact and whether that dispute was material.  *Shaw*, 884 F.3d at 1098.  If such a dispute exists—as it did here—summary judgment "will not lie."  *Anderson*, 477 U.S. at 248.  To be sure, denials of summary judgment expand the scope of a trial.  But that is a cost all litigants must bear for the jury to fulfill its function and reach a decision based on the facts "actually admitted and as actually adduced."  *Shelkofsky v. Broughton*, 388 F.2d 977, 979 (5th Cir. 1968) (per curiam).

*Second*, there would have been no prejudice to Plaintiff in any event.  Indeed, even in situations where a court reconsiders summary judgment at trial *sua sponte*, there is no unfair prejudice to a party where the issue was "live," and the party had an opportunity to "present evidence relating to the newly revived issue."  *Latin Am. Music Co. v. Media Power Grp., Inc.*, 705 F.3d 34, 41 (1st Cir. 2013) (quoting *Alberty–Vélez v. Corporación de P.R. para la Difusión Pública*, 242 F.3d 418, 422, 424–425 (1st Cir. 2001)).  Both were true here.  Plaintiff's consent—the core dispute as to both claims—was a live issue.  And it was not too late to put on more evidence.  The District Court even suggested that Plaintiff could call additional witnesses or take the stand again herself.  Doc. 320 at 16.  And the court did not find that presenting such evidence would be overly burdensome or otherwise impractical.

*Third*, Plaintiff did not even *assert* prejudice from reopening the issue at trial. Plaintiff's counsel's argument was that he stipulated to the admission of the FBI Notes "in reliance" on the partial summary judgment ruling—something he "would not have done" otherwise.  Doc. 320 at 15.  A party should not be allowed to undermine a court's prior order and claim reliance on that order in the same breath. This is not prejudice.  It is the foreseeable consequence of introducing a fact dispute into the trial record.

The District Court also suggested that it could adequately mitigate prejudice to Carnival by removing the phrase "Carnival is responsible for the false imprisonment of Plaintiff" from the false-imprisonment jury instruction.  Doc. 362 at 6–7; Doc. 320 at 71.  Not nearly.  The jury was still instructed as to the definition of "false imprisonment," including that an individual is held "against their will," and was instructed that "the only issue" remaining on that claim "is whether the false imprisonment caused plaintiff's damages."  Doc. 320 at 71.  Plaintiff also was still allowed to argue at closing:

> There's a false imprisonment count, which has *already been decided* . . . She was falsely imprisoned in that closet. She did not have the freedom to leave. She had to bend over if she wanted to leave. She was falsely imprisoned.

Doc. 320 at 101–102 (emphasis added).  The jury got the message loud and clear.  A new trial is warranted.

## III. THE DISTRICT COURT IMPERMISSIBLY EXCLUDED IMPEACHMENT EVIDENCE AT TRIAL.

The District Court's initial decision to exclude the FBI Reports at summary judgment, and its decision to maintain summary judgment at trial, tainted the trial from the outset. Independent of that, the District Court's exclusion of the FBI Reports for *any* purpose at trial was manifestly unjust.

Plaintiff's experts relied on the Reports in their opinions—at times repeating statements from the Reports verbatim. But one expert failed to disclose this reliance until she was cross-examined at trial. And the District Court would not admit the Reports even for the limited purpose of impeachment. Carnival could neither prepare nor present a proper case under those circumstances. That, too, warrants a new trial.

"Because they can offer such uniquely powerful opinion testimony," experts are subject to certain "disclosure requirements set out in Rule 26." *Cedant v. United States*, 75 F.4th 1314, 1319–20 (11th Cir. 2023). Parties relying on an expert witness must provide "a complete statement of all opinions the witness will express and the basis and reasons for them." *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 592 (11th Cir. 2019) (quotation marks omitted). Failure to provide such information precludes a party from using "that information or witness" to supply evidence at trial. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (quoting Fed. R. Civ. P. 37(c)(1)).

40

The Federal Rules of Evidence set up a bargain for experts who disclose reliance on inadmissible evidence. Experts are permitted to base their opinions on such evidence. Fed. R. Evid. 703; *United States v. Floyd*, 281 F.3d 1346, 1349 (11th Cir. 2002) ("[H]earsay testimony by experts is permitted if it is based upon the type of evidence reasonably relied upon by experts in the particular field."). But in exchange, the expert "may be required to disclose those facts or data on cross-examination." Fed. R. Evid. 705. In that scenario, "otherwise hearsay evidence . . . should be admissible to impeach" if it is "strictly limited to that purpose by instructions." *Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 545 (5th Cir. 1978); *see also United States v. A & S Council Oil Co.*, 947 F.2d 1128, 1135 (4th Cir. 1991) ("Rule 703 creates a shield by which a party may enjoy the benefit of inadmissible evidence by wrapping it in an expert's opinion; Rule 705 is the cross-examiner's sword, and, within very broad limits, he may wield it as he likes.").

The District Court did not enforce the terms of that bargain. Both at summary judgment and *in limine*, the District Court (improperly) excluded the FBI Reports as hearsay. Doc. 197; Doc. 233. Yet it went on to exclude the Reports for the distinct *non*-hearsay purpose of impeachment.

Carnival's cross examination of Plaintiff's security expert, Lance Foster, confirmed as much. Foster disclosed his reliance on the FBI Reports prior to trial. Doc. 317 at 150. And Carnival's counsel explained at trial that "Rule 703 and 705"

entitled it to "explore the basis of the expert's opinions." *Id.* at 155. But the District Court, relying on its prior ruling, took the view that "the FBI conclusion . . . is not coming into evidence, period." *Id.* at 151. That was a categorical error. "[A]ll manner of matter otherwise inadmissible may, in a proper case, come in for impeachment purposes." *Barrera v. E. I. Du Pont de Nemours & Co.*, 653 F.2d 915, 921 (5th Cir. 1981); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting Fifth Circuit decisions as of September 30, 1981). Evidence offered for those purposes may not be excluded simply because "it would have been inadmissible as direct evidence." *Barrera*, 653 F.2d at 921; *Macuba v. DeBoer*, 193 F.3d 1316, 1324 (11th Cir. 1999) (stating that otherwise-hearsay statements may be "used solely for impeachment purposes").

Those rulings foreclosed Carnival's ability to effectively examine another of Plaintiff's experts, Dr. Surloff. Dr. Surloff also relied on information in the FBI Notes and Reports—a fact that was not revealed prior to trial, but only on cross-examination. Doc. 319 at 86–87.[4] Dr. Surloff, it turned out, had "repeated exactly what [Anggara] said" in his comments "to the FBI" as well as "what was written" in the FBI Report in several places—except, that is, for the FBI's conclusion that the

---

[4] In addition to the lack of pre-trial disclosure, Dr. Surloff neglected to bring the FBI Reports—and other materials she relied upon—to trial, despite a subpoena requiring she do so. *Id.* at 88, 100–101. Carnival attempted to ascertain the extent of Dr. Surloff's reliance by refreshing Dr. Surloff's recollection with the Reports at trial, yet she could not recall seeing them. *Id.* at 90–91.

encounter was consensual. *Id.* at 89–90. Her testimony was ripe for impeachment on that basis. But the court had made clear again and again—pre-trial, *in limine*, and just days earlier—that the Reports' conclusion would not be admitted for *any* purpose. *See* Doc. 151; Doc. 233; Doc. 317 at 150.

Those errors affected Carnival's substantial rights. Dr. Surloff's testimony went to the most important issue in this case: consent. And Plaintiff leveraged that testimony to address vulnerabilities in her case. For instance, Plaintiff could not recall at trial whether she consented to a sexual encounter in the storage closet, how she got into the closet, and whether the door was locked. Doc. 319 at 235. But Dr. Surloff was allowed to bolster that testimony by opining that Plaintiff's very lack of memory suggested that these events did, in fact, happen—testimony Plaintiff relied upon at closing. *See, e.g*., Doc. 319 at 44–45, 47–48; Doc. 329-1 at 2 ("He had locked the closet door"); Doc. 320 at 87–88 (noting that Dr. Surloff "told you that [Plaintiff] had just hit her head. Do you think she's going into a maintenance closet? . . . We know what really happened.) When Dr. Surloff revealed that she relied upon the FBI Reports (though—again—not its conclusion), Carnival should have been allowed to impeach Dr. Surloff with the Reports' conclusion that the encounter was consensual.

After all these evidentiary issues had cropped up, the District Court offered a new justification for excluding the FBI Reports on the last day of trial. The court

announced that it had "done a 403 balancing test with regard to the content [of the FBI Reports]." Doc. 320 at 67. Plaintiff had not raised such an objection at trial; and the court did not mention prejudice concerns in any of its four prior discussions of the Reports' admissibility. *See* Doc. 151 at 10; Doc. 197 at 1; Doc. 233; Doc. 317 at 151.

That alternative rationale was error, too. Although the District Court did not expressly consider this side of the equation, the probative value of the FBI Reports' conclusion was obvious and high. A government agency with investigatory expertise—whose reports the rules presume to be "fair" and trustworthy—made an affirmative finding that the interaction was consensual. *See United States v. Versaint*, 849 F.2d 827, 832 (3d Cir. 1988).

The District Court raised two concerns in response: (1) that the Special Agents were on board for "three hours" and did not "have the benefit of three years of discovery" and (2) that the FBI was looking for "whether they c[ould] prove [the elements of a crime] beyond a reasonable doubt," which is harder to satisfy than the standard at a civil trial. Doc. 320 at 67. Neither concern "substantially outweighs" the FBI Reports' probative value. Fed. R. Evid. 403.

*First*, the temporal proximity of the FBI Reports to the incident is a powerful indicator of their reliability. The Special Agents were able to examine the scene and interview witnesses within *24 hours* of the incident. Their immediate findings about

44

what had happened must be at least as reliable as trial testimony three years removed. Moreover, there is no basis to conclude that three hours—roughly the length of Plaintiff's entire trial testimony, Doc. 320 at 155, 263—was too little time to investigate under the circumstances. Plaintiff could also have adduced any such deficiencies from Special Agent Andreasen, who testified that same day. Doc. 320 at 1.

*Second*, the District Court's burden-of-proof concern operates off a mistaken assumption. There is no indication that the Special Agents reached their conclusion based on an inability to prove *lack* of consent beyond a reasonable doubt. Rather, the FBI Reports made an *affirmative finding* of consent, which they expressed no doubt about one way or the other.

The FBI Reports separately mentioned the U.S. Attorneys' Office decision not to prosecute. But to the extent the standard applicable to that decision would confuse the jury, Plaintiff could have adduced evidence to "place the determination in its proper context." *Blanton*, 273 F. App'x at 804–805 (discussing differing standards applicable to an EEOC determination). Or, the District Court could have "guard[ed] against the improper use of th[at] evidence" with a limiting instruction, explaining that a decision not to prosecute "is not an adjudication of rights and liabilities." *Goldsmith v. Bagby Elevator Co*., 513 F.3d 1261, 1288–89 (11th Cir. 2008) (quotation marks omitted). Yet often in these contexts, "the jury is perfectly

capable of weighing the evidence." *United States v. Gluk*, 831 F.3d 608, 615 (5th Cir. 2016) (considering findings in SEC memoranda).

If anything, *excluding* the FBI Reports' conclusions risked confusing the jury. Through the admission for the FBI Notes, the jury learned that there was an FBI investigation. Doc. 320 at 24. The jury also heard that Plaintiff's experts reviewed reports from that FBI investigation. Doc. 319 at 86–88. And the experts were allowed to testify to *their* conclusions based on the Reports' contents. *Id.* The jury– left to speculate about what the investigation involved—could only assume that the FBI reached the same conclusion. But "the jury was also entitled to hear that the government conducted an independent investigation and reached a different conclusion." *Gluk*, 831 F.3d at 616 (reversing exclusion of conclusions in SEC memoranda on Rule 403 grounds).

## IV. THE DISTRICT COURT MADE A SERIES OF ERRORS IN ITS APPROACH TO DAMAGES.

Beyond its rulings undermining Carnival's liability defense, the District Court made a number of missteps in its approach to damages. By failing to instruct the jury on mitigation—despite evidence that Plaintiff did not follow her doctor's instructions—the court cleared a path for the jury to award substantial damages. It stepped into the jury's shoes to award Plaintiff prejudgment interest. And when the jury returned a verdict well in excess of any comparable case, the District Court

declined to right-size the verdict via remittitur. Those errors respectively warrant a new damages trial, remand with instructions to remit the verdict, and reversal.

### A.    The District Court Erred In Denying A Mitigation Instruction.

Mitigation is appropriate where a plaintiff's "inaction that occurs after the defendant's wrongful act . . . magnifies the resulting damages." *Rubinstein v. Yehuda*, 38 F.4th 982, 1000 (11th Cir. 2022). A "paradigmatic example" is the scenario presented here: A plaintiff's failure "to obtain proper medical care *after* the [incident] may lessen his recovery for the subsequent aggravated condition." *Id.* (quotation marks omitted); *see also Dolsak v. Comm'r of Soc. Sec.*, 724 F. App'x 914, 915 (11th Cir. 2018) (finding mitigation appropriate where the plaintiff "failed to seek certain treatment that would have further reduced his limitations").

That principle applies regardless of whether injury is physical or psychological. Courts sitting in admiralty have recognized a mitigation defense for decades; they do not purport to distinguish between types of injury. *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1286 (11th Cir. 2000) (noting admiralty courts have recognized a mitigation affirmative defense since 1966). Instead, they generally impose on a plaintiff "a duty to take reasonable steps to minimize his or her losses." *Id.* (quotation marks and citation omitted). Admiralty courts have thus permitted mitigation defenses even where a plaintiff seeks "non-economic damages"

47

for "pain and suffering, mental anguish, and the like," just as Plaintiff did below. *Nevor v. Moneypenny Holdings, LLC*, 842 F.3d 113, 119 (1st Cir. 2016).

State tort law—which courts frequently look to in admiralty cases—dispels any lingering question about the applicability of mitigation to psychological damages. *See Brockington v. Certified Elec., Inc*., 903 F.2d 1523, 1532 (11th Cir. 1990). The Florida Supreme Court has long viewed mitigation as applicable "in virtually every type of case in which the recovery of a monetary judgment or award is authorized." *State ex rel. Dresskell v. City of Miami*, 13 So. 2d 707, 709 (Fla. 1943). The New York Court of Appeals has held that "a defendant who believes that a plaintiff has unreasonably failed to take steps to relieve emotional distress . . . can raise a failure to mitigate damages defense." *Ornstein v. New York City Health & Hosps. Corp*., 881 N.E.2d 1187, 1193 (N.Y. 2008); *see also Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1276 (3d Cir. 1979) (finding that, under Pennsylvania law, a jury was "properly instructed on the significance of [the plaintiff's] reluctance to undergo extensive medical testing after sustaining emotional distress"). This case law underscores the broad sweep of the mitigation principle.

The District Court thus was wrong to reject a mitigation instruction for the sole reason that the case involved "emotional distress" damages. Doc. 320 at 19. At an earlier hearing, the District Court appeared to base its concern about the

applicability of mitigation on this Court's decision in *Rubinstein*. 7/7/22 Tr. at 36. But that case is inapposite. The *Rubinstein* panel essentially rejected the idea of "pre-mitigation"; it concluded that a mitigation instruction "should not have been submitted to the jury because the evidence did not show that [plaintiff's] inaction occurred *after* the [defendant's] wrongdoing." 38 F.4th at 1001. No part of the opinion addressed the applicability of mitigation to different types of damages. If anything, the District Court's observation that it had "seen nothing about mitigation" in the psychological damages context should have confirmed the rule—that mitigation is available no matter the injury alleged. Doc. 320 at 19.

The District Court's decision prevented the jury from considering ample evidence of Plaintiff's failure to mitigate. Plaintiff did not see a psychiatrist until a year after the encounter, and even then, went only twice. Doc. 319 at 250; Doc. 312-57 at 6. Plaintiff's expert Dr. Surloff also had recommended that Plaintiff see a psychiatrist twice a week after examining Plaintiff before trial. Doc. 319 at 65. Plaintiff did not obtain that treatment, either. *Id.* at 250–251.

The effect on the verdict was profound. The court instructed the jury to award "compensation for all Plaintiff's damages." Doc. 320 at 186. The jury's award of $240,000 in future medical care and $10,000,000 in pain and suffering thus represented the "total amount of Plaintiff's damages" for her asserted injuries. Doc. 307 at 2. Unaware that it could consider Plaintiff's failure to mitigate, however, the

49

jury could not consider whether that "total" could have been reduced with early and regular treatment.

**B.    The District Court Usurped The Jury's Role In Awarding Prejudgment Interest.**

The District Court put yet another foot wrong when it decided to award prejudgment interest despite the issue not being submitted to the jury.

Prejudgment interest "is for the fact finder to assess." *E. S. I. Meats, Inc. v. Gulf Fla. Terminal Co*., 639 F.2d 1348, 1357 (5th Cir. 1981). When admiralty cases are tried to a judge, the court assesses prejudgment interest. *See, e.g.*, *Barcliff, LLC v. M/V DEEP BLUE*, 876 F.3d 1063, 1068 (11th Cir. 2017). Where a plaintiff demands a jury trial, however, the responsibility to assess interest shifts. As the Fifth Circuit has explained, citing earlier precedent binding on this Court, the basis for a court's discretion to award prejudgment interest in admiralty turns on the need to assess damages, "which obviously is a factual issue." *Havis v. Petroleum Helicopters, Inc*., 664 F.2d 54, 55 (5th Cir. 1981). That is because admiralty, unlike the common law, views prejudgment interest "not [as] a penalty" but as just another part of "compensation to the plaintiff." *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc*., 561 F.3d 1181, 1192 (11th Cir. 2009). Thus, "where a maritime cause of action is tried solely to a jury which has been demanded under the exercise of diversity jurisdiction the grant or denial of pre-judgment interest must be submitted to the jury." *Havis*, 664 F.2d at 55.

Other courts of appeal agree. *Robinson v. Pocahontas, Inc.*, 477 F.2d 1048, 1053 (1st Cir. 1973) (stating "[i]t is the federal law that in actions at law when the award of interest rests in discretion, it is the jury who must exercise it" (quotation marks omitted)); *Newburgh Land & Dock Co. v. Texas Co.*, 227 F.2d 732, 735 (2d Cir. 1955) (Hand, J.) (same); *see also Gilliam v. Allen*, 62 F.4th 829, 849 (4th Cir. 2023) (citing *Havis* and *Newburgh* for the proposition that "it was the role of the jury to determine whether to award prejudgment interest"). A leading admiralty law treatise similarly recognizes that a court may grant prejudgment interest after awarding certain types of damages "but not when the award is made by a jury." 1 T. Schoenbaum, Admiralty & Mar. Law § 6:18 & n.45 (6th ed. 2024) (citing *Robinson*, 477 F.2d at 1048); *see also Great Lakes Ins. SE v. Raiders Retreat Realty Co.*, 601 U.S. 65, 70–72 (2024) (citing Schoenbaum's treatise extensively).

The District Court brushed aside that precedent, citing language in two of this Court's decisions denying awards of prejudgment interests on distinct grounds. Doc. 390 at 11–12 (citing *Reichert v. Chemical Carriers, Inc.*, 794 F.2d 1557, 1558 (11th Cir. 1986) and *Lebron v. Royal Carribean Cruises, Ltd.*, No. 20-14449, 2021 WL 2917265, at *2 (11th Cir. July 12, 2021)). Because the juries in both cases did not pass on prejudgment interest, the District Court inferred that this Court had implicitly rejected the rule of its sister circuits. *See id.* That does not follow. The "who decides" question was not addressed in either case. Rather, each one addressed

51

a different principle: that a plaintiff must provide some method to "determine upon which portion of the judgment, if any, to award prejudgment interest." *Lebron*, 2021 WL 2917265, at *2 (quoting *Reichert*, 794 F.2d at 1559)).  Plaintiffs in both cases failed to do so, rendering prejudgment interest improper regardless of whose responsibility it was to award.  This distinct limit on prejudgment interest was in no way exclusive to the one asserted here.

### C.    The District Court Abused Its Discretion In Refusing To Remit The Verdict.

As this Court has explained, a court "shall order a remittitur" when it "finds that the amount awarded is excessive," considering among other things whether the award "bears a reasonable relation" to the evidence and amounts awarded in similar cases. *Kerrivan v. R.J. Reynolds Tobacco Co.*, 953 F.3d 1196, 1204, 1207 (11th Cir. 2020) (quotation marks omitted).  The District Court thus had a last chance to course-correct when it took up Carnival's motion for remittitur.  It erred in denying that, too.

Start with the evidence.  Plaintiff at best proved harm limited to a narrow span of time.  Plaintiff by her own admission had suffered depression, psychosexual trauma, and exhibited suicidal ideation *before* the incident giving rise to this case. Doc. 319 at 49, 97; *see also id.* at 49–50 (Dr. Surloff confirming Plaintiff's prior PTSD diagnosis).  Other testimony revealed that Plaintiff did not seek the

appropriate care until long after the encounter, *id.* at 250. And by the time of trial, Plaintiff was functioning well. *Id.* at 224–26.

Plaintiff did not even attempt to tie damages to that period. Instead, Plaintiff's counsel floated that damages should be assessed at $1 million for each of the 20 minutes Plaintiff spent in the closet, Doc. 320 at 106, coupled with another $20 million for the time since then, *id.* Those lump sums had no rational relationship to any evidence, much less to the "medical expert testimony" Plaintiff was required to use "to prove causation." *See Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332, 1338 (11th Cir. 2023). But that arbitrary ask did one important thing: It anchored the jury's thinking to numbers in the tens of millions. *See, e.g.*, John Campbell et al., *Countering the Plaintiff's Anchor: Jury Simulations to Evaluate Damages Arguments*, 101 IOWA L. REV. 543, 546 (2016) ("Numerous studies have suggested that a successful plaintiff can obtain a higher damage award simply by . . . requesting more money from the jury. Psychologists call this an 'anchoring effect,' referring to when 'individuals' numerical judgments are influenced by an arbitrary or irrelevant number.'")

Verdicts in similar cases confirmed the excessiveness of the jury's award in this case. The court recognized that an analogous maritime sexual battery case awarded $1,000,000—roughly $1,600,000 in 2022 dollars—to the plaintiff in compensatory *and* punitive damages. *Doe v. Celebrity Cruises*, 00-cv-02523, 2002

WL 34683586 (S.D. Fla. Nov. 22, 2002). The court found Plaintiff's cited cases, which had awarded stratospheric damages for materially different harms, "distinguishable." Doc. 362 at 9. And the court pointed to two other cases—"a 5.35 million noneconomic damage award from a jury related to sexual assault in California," and another case "where the amount in question was 6 million." *Id*. at 10. Plaintiff's award was an order of magnitude out of step with those examples.

The District Court offered two reasons for maintaining the verdict anyway: the "dearth of comparison" cases, and the fact Carnival did not affirmatively "assist the jury" in establishing a monetary range for the verdict. Doc. 362 at 9–10. But the "dearth of comparison" cases cuts both ways; there are *no* cases the court deemed to support Plaintiff's verdict. And Carnival's decision not to affirmatively capitulate to some damages award in this case should not have been dispositive, either. Indeed, the case the District Court cited to support its concern *affirmed* remittitur in similar circumstances. *Aills v. Boemi*, 41 So. 3d 1022, 1029 (Fla. 2d DCA 2010). Despite the lack of an explicit defense damages number, the parties' extensive submissions coupled with materially lower awards in two similar cases established the "maximum limit of a reasonable range within which the jury [could] properly operate." *Id*. So too, here. The Parties' submissions provided ample basis to reduce the award to the range established in similar cases. This Court should remand with instructions to remit.

## CONCLUSION

For the foregoing reasons, the Court should vacate the judgment against Carnival and order a new trial on Plaintiff's claims for false imprisonment and sexual assault.  Alternatively, this Court should vacate the judgment and remand for a trial limited to damages or, at the very least, remand with instructions to remit the award.

Respectfully submitted,

CURTIS J. MASE
WILLIAM R. SEITZ
MASE SEITZ BRIGGS
2601 South Bayshore Dr., Suite 800
Miami, FL 33133

/s/ Catherine E. Stetson
CATHERINE E. STETSON
EZRA P. LOUVIS
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Appellant Carnival Corporation*

Dated: December 6, 2024

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,909 words, exclusive of those items listed in Fed. R. App. P. 32(f).

2.      This document complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14-point font.

/s/ Catherine E. Stetson

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2024, I caused a copy of the foregoing to be served by electronic means via the Court's CM/ECF system on all counsel registered to receive electronic notices.

/s/ Catherine E. Stetson