No. 24-13159

IN THE

# United States Court of Appeals
# For the Eleventh Circuit

———————————

JANE DOE,

*Plaintiff-Appellee*,

v.

CARNIVAL CORPORATION,

*Defendant-Appellant*.

———————————

On Appeal from the United States District Court
for the Southern District of Florida, Miami Division
No. 1:19-CV-24766-KMW

———————————

**REPLY BRIEF FOR APPELLANT CARNIVAL CORPORATION**

———————————

CURTIS J. MASE                    CATHERINE E. STETSON
WILLIAM R. SEITZ                  KEENAN ROARTY
MASE SEITZ BRIGGS                 HOGAN LOVELLS US LLP
2601 South Bayshore Dr., Suite 800   555 Thirteenth Street, N.W.
Miami, FL 33133                   Washington, D.C. 20004
                                  (202) 637-5600
                                  cate.stetson@hoganlovells.com

*Counsel for Defendant-Appellant Carnival Corporation*

April 28, 2025

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant-Appellant Carnival Corporation, discloses that it is a publicly traded company whose common stock is listed on the New York Stock Exchange (CCL), and that there is no parent corporation or publicly held corporation that holds ten percent or more of its stock.

Defendant-Appellant Carnival Corporation certifies that the following persons and entities have or may have an interest in the outcome of this case:

Anggara, Fredy

Cabeza, Lauren Nicole

Carnival Corporation

Courtney, Daniel Warren

Daniel W. Courtney, P.A.

Hogan Lovells US LLP

Lempinen, Sierra

Levitt, Lauren Ashley

Roarty, Keenan

Mase Seitz Briggs, P.A.

Mase, Curtis Jay

Philip D. Parrish P.A.

Parrish, Philip Dixon

Rauh, Tyler Joseph

Robinson, Charlotte Ashley

Seitz, William Robert

Stetson, Catherine E.

Torres, Edwin G. (United States Chief Magistrate Judge)

Williams, Kathleen M. (United States District Judge)

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ................................C-1

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ..................................................................................1

ARGUMENT ..........................................................................................2

I.    PARTIAL SUMMARY JUDGMENT ON FALSE
      IMPRISONMENT WAS ERROR ......................................................2

      A.    Exclusion Of The FBI Reports' Conclusions As
            Hearsay Was Error ......................................................................2

      B.    Plaintiff's Uncertain Recollection Created A
            Genuine Dispute Of Fact ............................................................8

II.   THE DISTRICT COURT LEGALLY ERRED IN
      FAILING TO RECONSIDER ITS GRANT OF
      PARTIAL SUMMARY JUDGMENT WHEN A
      MATERIAL FACT DISPUTE AROSE AT TRIAL .........................10

III.  PLAINTIFF'S EXPERTS RELIED ON THE FBI
      REPORTS AND IMPEACHMENT WOULD HAVE
      BEEN VALUABLE ........................................................................14

IV.   THE DISTRICT COURT MADE SERIOUS ERRORS
      IN ITS DAMAGES RULING ..........................................................18

      A.    The District Court Legally Erred In Denying A
            Mitigation Instruction ..............................................................18

      B.    The District Court Legally Erred In Awarding
            Prejudgment Interest ................................................................21

      C.    The District Court Abused Its Discretion In
            Refusing To Remit The Verdict ................................................23

## TABLE OF CONTENTS—Continued

**Page**

CONCLUSION ....................................................................................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Access Now, Inc. v. Sw. Airlines Co.*,
   385 F.3d 1324 (11th Cir. 2004) ...................................................................11

*Adams v. Ameritech Servs., Inc.*,
   231 F.3d 414 (7th Cir. 2000) .......................................................................5

*A.L. by & through D.L. v. Walt Disney Parks & Resorts U.S., Inc.*,
   50 F.4th 1097 (11th Cir. 2022) ....................................................................13

*Baca v. Island Girl, Ltd.*,
   No. CACE-16-003324 (Fla. Cir. Ct. 2018) ...................................................24

*Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*,
   956 F.2d 1112 (11th Cir. 1992) ....................................................................18

*Barfield v. Orange Cnty.*,
   911 F.2d 644 (11th Cir. 1990) .......................................................................6

*Barrera v. E. I. Du Pont De Nemours & Co.*,
   653 F.2d 915 (5th Cir. 1981) .......................................................................17

*Bell v. Williams*,
   108 F.4th 809 (9th Cir. 2024) .......................................................................23

*Bryan v. John Bean Div. of FMC Corp.*,
   566 F.2d 541, 545-547 (5th Cir. 1978)..................................................15, 17

*Carnival Cruise Lines, Inc. v. Goodin*,
   535 So. 2d 98 (Ala. 1988)............................................................................19

*Carrizosa v. Chiquita Brands Int'l, Inc.*,
   47 F.4th 1278 (11th Cir. 2022) .................................................................3, 10

\* Per Local Rule 28-1(e), authorities upon which we primarily rely are marked with an asterisk.

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Coffey v. Carroll*,
　933 F.3d 577 (6th Cir. 2019) .........................................................10

*Conroy v. Abraham Chevrolet-Tampa, Inc.*,
　375 F.3d 1228 (11th Cir. 2004) ....................................................18

*\*Crawford v. ITW Food Equip. Grp., LLC*,
　977 F.3d 1331 (11th Cir. 2020) ............................................3, 4, 10

*Daubert v. Merrell Dow Pharms., Inc.*,
　509 U.S. 579 (1993)........................................................................7

*Doe v. Celebrity Cruises*,
　No. 00-cv-02523, 2002 WL 34683586 (S.D. Fla. Nov. 22,
　2002) .............................................................................................25

*Doe v. Celebrity Cruises, Inc.*,
　394 F.3d 891 (11th Cir. 2004) ......................................................25

*Doe v. Claiborne Cnty.*,
　103 F.3d 495 (6th Cir. 1996) ..........................................................7

*Doe v. Sch. Bd. of Miami-Dade Cnty.*,
　624 F. Supp. 3d 1292 (S.D. Fla. 2022).........................................24

*Echeverry v. Jazz Casino Co., L.L.C.*,
　988 F.3d 221 (5th Cir. 2021) ........................................................25

*E.E.O.C. v. Fred Meyer Stores, Inc.*,
　954 F. Supp. 2d 1104 (D. Or. 2013).............................................19

*Ellis v. Int'l Playtex, Inc.*,
　745 F.2d 292 (4th Cir. 1984) ..........................................................4

*Gasperini v. Center for Humanities, Inc.*,
　518 U.S. 415 (1996).......................................................................24

iv

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Glynn v. Roy Al Boat Mgmt. Corp*.,
  57 F.3d 1495 (9th Cir. 1995) ........................................................................21

*Gomez v. Am. Empress Ltd. P'ship*,
  189 F.3d 473 (9th Cir. 1999) ........................................................................20

*Gossett v. Du-Ra-Kel Corp.*,
  569 F.2d 869 (5th Cir. 1978) ........................................................................12

*Havis v. Petroleum Helicopters, Inc.*,
  664 F.2d 54 (5th Cir. 1981) .................................................................... 21-23

*Hines v. Brandon Steel Decks, Inc.*,
  886 F.2d 299 (11th Cir. 1989) ........................................................................5

*In re Paoli R.R. Yard PCB Litig.*,
  916 F.2d 829 (3d Cir. 1990) ......................................................................5, 6

*I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*,
  182 F.3d 51 (1st Cir. 1999)..........................................................................15

*Jensen v. EXC, Inc.*,
  82 F.4th 835 (9th Cir. 2023) ................................................................. 15-17

*Kerrivan v. R.J. Reynolds Tobacco Co.*,
  953 F.3d 1196 (11th Cir. 2020) ...................................................................26

*Lebron v. Royal Carribean Cruises, Ltd*.,
  No. 20-14449, 2021 WL 2917265 (11th Cir. July 12, 2021) .................21, 22

*Messer v. E.F. Hutton & Co.*,
  833 F.2d 909 (11th Cir. 1987) .....................................................................20

*Minter v. Prime Equip. Co.*,
  451 F.3d 1196 (10th Cir. 2006) ...................................................................12

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Newburgh Land & Dock Co. v. Texas Co.*,
  227 F.2d 732 (2d Cir. 1955) ...........................................................22

*Old Chief v. United States*,
  519 U.S. 172 (1997)...........................................................................6

*Ornstein v. New York City Health & Hosps. Corp.*,
  881 N.E.2d 1187 (N.Y. 2008) .......................................................19

*Petersen v. Chesapeake & Ohio Ry. Co.*,
  784 F.2d 732 (6th Cir. 1986) .........................................................21

*Pool v. City of Oakland*,
  728 P.2d 1163 (Cal. 1986)..............................................................19

*Ray v. Am. Airlines, Inc.*,
  609 F.3d 917 (8th Cir. 2010) ............................................................5

*Reichert v. Chemical Carriers, Inc.*,
  794 F.2d 1557 (11th Cir. 1986) ...............................................21, 22

*Robinson v. Pocahontas, Inc.*,
  477 F.2d 1048 (1st Cir. 1973)...................................................22, 23

*Rustenhaven v. Am. Airlines, Inc.*,
  320 F.3d 802 (8th Cir. 2003) .........................................................24

*Selman v. Cobb Cnty. Sch. Dist.*,
  449 F.3d 1320 (11th Cir. 2006) .....................................................15

*Skaria v. State*,
  442 N.Y.S.2d 838 (N.Y. Ct. Cl. 1981) ..........................................19

*Tippens v. Celotex Corp.*,
  805 F.2d 949 (11th Cir. 1986) .........................................................9

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*United States v. A & S Council Oil Co.*,
    947 F.2d 1128 (4th Cir. 1991) ....................................................17, 18

*United States v. Alba-Suarez*,
    610 F. App'x 607 (9th Cir. 2015) .......................................................5

*United States v. Campbell*,
    491 F.3d 1306 (11th Cir. 2007) .......................................................22

*United States v. Cunningham*,
    679 F.3d 355 (6th Cir. 2012) .............................................................7

*United States v. Dupree*,
    706 F.3d 131 (2d Cir. 2013) ..............................................................9

*\*United States v. Gluk*,
    831 F.3d 608 (5th Cir. 2016) .............................................................7

*United States v. Macrina*,
    109 F.4th 1341 (11th Cir. 2024) .......................................................5

*United States v. McDowell*,
    348 F. App'x 455 (11th Cir. 2009) ..................................................14

*Wyatt v. Penrod Drilling Co.*,
    735 F.2d 951 (5th Cir. 1984) ..........................................................21

**RULES:**

Fed. R. Evid. 705, advis. comm. note (1973) .........................................16

Fed. R. Evid. 801(d)(2) .............................................................................8

Fed. R. Evid. 803(6) ................................................................................10

**TABLE OF AUTHORITIES—Continued**

<u>Page(s)</u>

OTHER AUTHORITIES:

American Association for Justice, *Sexual Abuse of Minor*, 48-MAR
    JTLATRIAL 10 (Mar. 2012) (Westlaw) ........................................................24

Katharine K. Baker, Gender and Emotion in Criminal Law,
    28 Harv. J. L. & Gender 447 (2005) ..............................................................19

Restatement (Second) of Torts § 918 (1979) ..............................................................18

1 T. Schoenbaum, Admiralty and Maritime Law § 4:4
    (Nov. 2024 update) ..........................................................................................19

## INTRODUCTION

There are many things in this case Plaintiff does not dispute.  Plaintiff does not dispute that the District Court erred in treating everything within the FBI Reports as undifferentiable hearsay.  Plaintiff does not dispute that introducing the FBI Notes at trial created a genuine dispute of material fact.  And Plaintiff does not dispute that the District Court erred in categorically precluding the use of the FBI Reports for *any* purpose during trial, even impeachment.

Indeed, Plaintiff declines to defend much of the District Court's reasoning at all.  Instead she spends half her brief on her preferred narrative of the facts and the discovery process.[1]  Plaintiff also frequently argues Carnival waived various issues, but Carnival raised every single issue below.  The actual merits of the legal questions that this Court must decide are given comparatively little attention.  And many—if not most—of Plaintiff's responsive arguments are *alternative* rationales for each decision.  They all fall short regardless.

On those merits, the evidence is clear that one of the two parties in this case could make a full, vigorous case to the jury.  But the other one could not.  Carnival

---

[1] Although Plaintiff discusses discovery at length, the magistrate judge addressed such matters post-trial, found Carnival made no intentionally false statements, and awarded minimal fee-shifting sanctions after finding Plaintiff suffered no prejudice. Doc. 395 at 18, 27.  The same judge found no trial misconduct occurred. *Id.* at 30-39.

1

was handicapped before trial, at trial, and at the damages stage, forbidden from presenting evidence to the jury on many critical issues.

The subject matter of this case is delicate, but the Court's ultimate task is familiar. This appeal asks whether the lower court proceeding ultimately complied with the fundamental premise of our legal system: a jury resolves all matters of disputed fact concerning all relevant, admissible evidence. The case below did not. The District Court prevented the most critical evidence on consent from being heard. It prevented the jury from resolving a clear, significant fact dispute in the record. And it prevented the jury from deciding multiple key issues of damages.

The judgment should be reversed and remanded for a new trial on Plaintiff's false imprisonment and sexual assault claims.

## ARGUMENT

## I.    PARTIAL SUMMARY JUDGMENT ON FALSE IMPRISONMENT WAS ERROR.

### A.    Exclusion Of The FBI Reports' Conclusions As Hearsay Was Error.

The District Court made a hornbook evidentiary mistake by failing to separate the FBI Reports' hearsay statements from its non-hearsay statements. Opening Br. 22-30. It therefore excluded two highly probative pieces of evidence: the FBI's consensual-encounter finding and the decision to not prosecute Anggara. *Id.* In

2

response, Plaintiff makes a litany of arguments, most of them new and none of which succeed.

First, Plaintiff argues waiver.  Answering Br. 32.  That is a tell; waiver arguments are the favored resort of respondents with nothing else to say.  And the waiver argument here is meritless:  Carnival explicitly and repeatedly told the lower court that such statements were admissible under the public records exception.  *See* Doc. 153 at 8 (Carnival's opposition to adoption of R&R); Doc. 128 at 1-3 (response to motion in limine on FBI Reports).

Second, Plaintiff argues the FBI Reports are untrustworthy.  Answering Br. 33.  Plaintiff has the burden here:  We assume "the reliability gained from regularly conducted activities" and presume "that a public official will perform his duty properly."  *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1297 (11th Cir. 2022) (citations omitted).  Plaintiff does not dispute that the FBI's investigation was timely.  *See Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1347 (11th Cir. 2020) (timeliness of investigation is a hallmark of trustworthiness).  Plaintiff speculates that the FBI Special Agents were biased, but offers no evidence to dispute the presumption that "[m]ost investigators under a public duty lack a motive to distort the facts or their conclusions."  *Id.* at 1349 (citation omitted).  Plaintiff argues that no hearing was held, but does not explain what that would mean in this context or even that hearings are ever held in analogous circumstances.  *See also id.* at 1348

(declining to find an otherwise-reliable document untrustworthy simply because there was no hearing).

Plaintiff then critiques Special Agent Andreasen's "skill or experience." *Crawford*, 977 F.3d at 1348; Answering Br. 33. But Andreasen regularly investigates sexual assaults and received specialized training on exactly these cases. *See id.* at 1349; Doc. 320 at 26. Nor does Plaintiff explain how obtaining any video footage[2] or written statement would have changed anything, given it did not show the incident and she had already interviewed Anggara and Plaintiff. Doc. 320 at 37; Doc. 111-2 at 2-3. Plaintiff's revisionist factual narrative is also wrong. She argues that the Special Agents were unaware of Plaintiff's heavy intoxication, which is explicitly mentioned in the report. Doc. 111-2 at 2. Plaintiff also fails to mention the Special Agents' findings that Plaintiff was playful with Anggara and continued to make friendly conversation throughout the incident. *Id.*

Plaintiff's main concern seems to be that the Special Agents reached a result with which she does not agree. But the strength of the ultimate conclusion relates "to the relative weight accorded the evidence and not its admissibility." *Ellis v. Int'l Playtex, Inc.*, 745 F.2d 292, 303 (4th Cir. 1984). If Plaintiff believed the jury should

---

[2] Special Agent Andreasen verified there was no CCTV footage of the location after speaking with the ship's chief security officer. Doc. 320 at 37, 47, 57-58.

discredit the FBI Reports, the proper recourse was a "searching" cross-examination and presentation of other evidence, not inadmissibility. *Id.*

Third, Plaintiff briefly argues that the consensual-encounter finding and the declination of prosecution are not "findings of fact" under Federal Rule of Evidence 803(8)(C). Answering Br. 34. But the *fact* of a decision to not file charges is a yes/no event, the disputed existence of which would obviously "be subject to the clearly erroneous standard of review on appeal." *Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 303 (11th Cir. 1989). And consent is treated as a question of fact. *See, e.g., Ray v. Am. Airlines, Inc.*, 609 F.3d 917, 924 (8th Cir. 2010) (false imprisonment); *United States v. Alba-Suarez*, 610 F. App'x 607, 610 (9th Cir. 2015) (sexual offenses). At most, that the encounter was consensual is an "ultimate fact[ ] underlying" any later "legal conclusion" regarding whether sexual assault or false imprisonment occurred. *Hines*, 886 F.2d at 303 (internal quotation marks omitted).

Fourth, Plaintiff argues that the FBI Reports were either non-probative or unfairly prejudicial under Rule 403. Answering Br. 34-35. As Carnival explained, Rule 403 has little if any relevance at summary judgment. Opening Br. 26-27; *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990); *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2000). Even at trial, "Rule 403 is an 'extraordinary remedy' that the district court 'should invoke sparingly.' " *United States v. Macrina*, 109 F.4th 1341, 1350 (11th Cir. 2024). Invoking it to grant

5

*summary judgment* "is an extreme measure that is rarely necessary" and an abuse of discretion. *In re Paoli*, 916 F.2d at 859.

In any event, Plaintiff's Rule 403 argument fails on its own terms. Contrary to Plaintiff's argument, federal investigative reports like FBI reports remain "highly probative" regardless of whether it's a bench or jury trial. Answering Br. 34 (citing *Barfield v. Orange Cnty.*, 911 F.2d 644, 649 (11th Cir. 1990)). All that *Barfield* holds is that the *unfair prejudice* part of the Rule 403 equation may change. *Id.* But while the consensual-encounter finding significantly damaged Plaintiff's theory of the case, Rule 403 only guards against *unfair* prejudice—that which causes a jury to decide matters "on an improper basis." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). There is nothing improper about a jury listening to or crediting the findings of experienced FBI Special Agents who timely investigated the incident.

Plaintiff argues elsewhere that the FBI Special Agents were only on the ship for three hours and lacked "the benefit of three years of discovery." Answering Brief 41-42. But that discovery—on the critical issue of consent—has not added anything material beyond what the Special Agents already had: the testimony of the witnesses. Nor is there really any *more* probative or reliable evidence than how two experienced FBI Special Agents analyzed the situation within hours of it occurring, including immediate interviews with everyone involved. Regardless, Rule 403 is not used to exclude evidence that a party or court may think is weak. The "traditional and

appropriate means of attacking shaky but admissible evidence" is "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 515 (6th Cir. 1996) (quoting *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 596 (1993)).  Any complaints Plaintiff had about the FBI Reports needed to take place in open court through adversarial presentation.

On the separate fact of the declination of prosecution, Plaintiff repeats the District Court's concern about the different standards of proof.  Answering Br. 35.  But our judicial system presumes that a properly instructed "jury is perfectly capable of weighing the evidence" of the findings of different governmental bodies.  *United States v. Gluk*, 831 F.3d 608, 615 (5th Cir. 2016); *United States v. Cunningham*, 679 F.3d 355, 382-383 (6th Cir. 2012); Opening Br. 45-46.

Finally, Plaintiff argues that the consensual-encounter finding is hearsay because it was "not based upon evidence actually observed by Agent Andreasen" but rather on Anggara's statements.[3]  Answering Br. 36.  This is wrong.  For one, few incidents which become the subjects of FBI investigations are actually observed by agents, yet these investigations are nearly universally admissible. Moreover, Special Agent Andreasen's investigation was based on far more than Anggara's

---

[3]  Anggara's statements all fall under a hearsay exception, Plaintiff agreed to admit his written statement, and officers may regardless rely on hearsay in formulating still-admissible opinions. *See* Doc. 128 at 3-4; Doc. 201-1 at 4.

statements.  She spoke to all witnesses, observed their demeanor, investigated the location of the incident on the ship, and debriefed the ship's security personnel on their investigation.  *See generally* Doc. 320 at 26-35, 57.  And she specifically spoke to *Plaintiff*—from whom all statements are admissible as a statement from a party opponent—who told her, among other things, that she could not recall if the encounter was consensual, that she had been playful with Anggara before, and that she continued to make friendly conversation throughout the encounter.  Doc. 111-2 at 3; Fed. R. Evid. 801(d)(2).

### B.    Plaintiff's Uncertain Recollection Created A Genuine Dispute Of Fact.

The magistrate's grant of partial summary judgment relied on Plaintiff's purported "undisputed recollection" in her deposition that "at some point . . . Mr. Angarra [sic] did not let her exit the closet after she sought to do so."  Doc. 151 at 5-6, 10.  As Carnival explained, there is no such testimony.  Opening Br. 29.  And any such statement would be sharply undercut by Plaintiff's testimony that she couldn't recall whether (1) she consented to whatever happened inside; (2) she attempted to leave or was stopped from doing so; (3) she asked Anggarra to help her hide in the closet; (4) Anggarra locked the door; or (5) how she entered the closet in the first place.  *Id.* at 27-29.

Plaintiff does not defend this uncertain deposition testimony, instead pointing to two other hearsay sources.  *See* Answering Br. 37-38.  The Magistrate Judge did

not rely upon either. *See* Doc. 151 at 5-6 (granting summary judgment because of "Plaintiff's sworn deposition . . . alone"). One is a sentence in her handwritten statement where she alleged Anggara locked the door. Doc. 93-5 at 1. Another is a triple-hearsay relayed comment: Plaintiff's friend said that Plaintiff said that Anggara said she needed to have sexual relations in order to leave. Doc. 93-6 at 2.

Even assuming these statements are admissible, they create the exact kind of credibility dispute that precludes summary judgment. Plaintiff's later deposition confirmed she could not actually recall anything. And "[v]ariations in a witness's testimony and any failure of memory *throughout the course of discovery* create an issue of credibility." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986) (emphasis added). The only way for the court to resolve this conflicting testimony was to make a credibility determination—which it cannot do at summary judgment. *Id.* at 955.

Regardless, neither hearsay is admissible. Plaintiff has never argued the statements qualify for a hearsay exception. *See United States v. Dupree*, 706 F.3d 131, 135-136 (2d Cir. 2013) (arguments for a hearsay exception may not normally be heard for the first time on appeal). And even considering the argument now, as to the handwritten statement, Plaintiff provides no analysis why it should be admitted other than that it is "a Carnival business record." Answering Br. 37. That four-word argument is insufficient. Plaintiff provides no "requisite foundational

information"—no argument now or below that that the record is "kept in the course of a regularly conducted activity of [the] business" or that "making the record was a regular practice of that activity." *Carrizosa*, 47 F.4th at 1308; Fed. R. Evid. 803(6). And as to the triple-level hearsay, Plaintiff provides no reason why the third-level hearsay (e.g. Anggara's statement) qualifies for an exception. *See Crawford*, 977 F.3d at 1348 (explaining that "[i]f a statement contains multiple levels of hearsay, each level must satisfy an exception to the hearsay rule").

Last, Plaintiff argues that this case is unique because Plaintiff's poor recollection is because she was "blackout drunk." Answering Br. 38. That is indeed a reason why a jury could choose to credit (or not credit) her testimony. It highlights—not diminishes—why it was important that a jury judge the strength of her recollection. *See, e.g.*, *Coffey v. Carroll*, 933 F.3d 577, 588 (6th Cir. 2019) (explaining that intoxication "go[es] to the credibility of . . . testimony" and "is an issue of credibility to be determined by the jury").

## II. THE DISTRICT COURT LEGALLY ERRED IN FAILING TO RECONSIDER ITS GRANT OF PARTIAL SUMMARY JUDGMENT WHEN A MATERIAL FACT DISPUTE AROSE AT TRIAL.

Plaintiff does not dispute that the introduction of the FBI Notes created a genuine dispute of material fact. *See* Opening Br. 31-32. Nor does she dispute that the District Court would have been originally compelled to deny summary judgment with this evidence in play. *See id.* at 32-33. Nor does she dispute that admitting

material and "substantially different evidence" at trial requires a reconsideration of an original summary judgment motion. *See id.* at 33-35 (citing cases).

Instead, Plaintiff points to two extra-legal considerations.[4]  First, she revises the narrative, arguing that Carnival agreed to introduce the FBI Notes and filed its motion for reconsideration late.  Answering Br. 39-40, 42-44.  Her first argument is irrelevant and the second is wrong.  For one, the parties filed their Joint Pre-Trial Exhibit List with the FBI Notes almost a year *before* the District Court's partial summary judgment ruling.  Doc. 154.  And the FBI Notes were a mere line in a docket-entry filing until they were actually introduced into evidence.  It was at that point—and *only* at that point—that a new genuine dispute of material fact was injected into the trial.  Carnival filed a motion for reconsideration four days later.  Doc. 317 at 3-4 (evidence admitted on Wednesday); Doc. 296 (motion filed on Sunday, following Plaintiff's counsel's Sabbath observance).

Plaintiff's theory misses the mark more fundamentally as well.  *Of course* Carnival wanted the FBI Notes to come in.  They directly undercut Plaintiff's case. *See* Doc. 320 at 16 (District Court noting it did not "know how much more diametrically opposed" you could get between Plaintiff's account and Anggara's

---

[4]  Plaintiff briefly argues waiver, but her sole citation regards a party who made an argument for the first time *on appeal*, not during an active trial.  *See* Answering Br. 40, 44 (citing *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1335 (11th Cir. 2004)).

account).  As the District Court recognized, it was *Plaintiff* who "inexplicably" agreed to introduce the FBI Notes.  Doc. 362 at 6.  Carnival *agrees* with much of Plaintiff's analysis—"a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted."  Answering Br. at 40.  But it was not Carnival who had post-admission second thoughts about the FBI Notes.  It was Plaintiff.  Doc. 320 at 15.  Carnival simply identified the logical consequence of Plaintiff's strategic choice.  Once the FBI Notes were admitted, they were in front of the jury.  They gave rise to a disputed fact issue.  And our judicial system presumes that the jury decides questions of disputed fact.  *See* Opening Br. 32-33; *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 871 (5th Cir. 1978) (summary judgment is no "substitute for trial" where "material facts . . . [are] in dispute").

Plaintiff appears to argue that her case would have been prejudiced by reconsideration.  Answering Br. 40.  But there is no "prejudice" exception to summary judgment.  Opening Br. 38.  And to the extent prejudice existed at all, it was Plaintiff's own making.  *Id.* at 39; *see Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1211 (10th Cir. 2006) (party cannot complain about prejudice "of its own making" after "entering into [a] Joint Stipulation" for strategic purposes).  Nor does Plaintiff explain what this prejudice would be.  *See* Opening Br. 38.  As the District Court explained, Plaintiff had not yet rested her case.  Doc. 320 at 11.  Plaintiff's counsel could have, among other things, asked Plaintiff additional questions or

12

slightly reformulated their closing argument. *Id.* at 16, 21. Indeed, it is not clear what additional evidence Plaintiff believes she needed to show. Plaintiff cannot simply invoke the word "prejudice" without explaining the prejudice that would result. *E.g.*, *A.L. by & through D.L. v. Walt Disney Parks & Resorts U.S., Inc.*, 50 F.4th 1097, 1113 (11th Cir. 2022).

Next, Plaintiff makes various references to the FBI *Reports*, including the District Court's Rule 403 analysis and what the District Court would have to do if it admitted them. Answering Br. 40-43. All of that is irrelevant. This issue concerns the FBI *Notes*, the only FBI record admitted into evidence.

Finally, Plaintiff appears to argue that the introduction of the FBI Notes made no difference because a jury would have reached the same result. *Id.* at 40-41. This mistakes the analytical inquiry. The question is not whether hearing Anggara's story would have caused the jury to change their minds. The question is whether reversing the *summary judgment grant* on the false imprisonment claim would have changed anything. It most certainly would have. When the District Court told the jury that Plaintiff had *already been found* to have been falsely imprisoned—trapped in a room without her consent—the jury took the only logical next step and found the sexual encounter had *also* been without her consent. Opening Br. 3, 39. The summary judgment grant decided the whole case.

13

### III.  PLAINTIFF'S EXPERTS RELIED ON THE FBI REPORTS AND IMPEACHMENT WOULD HAVE BEEN VALUABLE.

Plaintiff's experts relied on the FBI Reports but ignored their most critical finding:  The encounter was consensual.  *See* Opening Br. 40-43.  Because that finding substantially undercut their testimony, it left those witnesses ripe for impeachment.  *See id.*  But the District Court erred in refusing use of the FBI Reports even for impeachment, and then backfilling that erroneous holding with a flawed Rule 403 rationale at the very end of trial.  *See id.* at 40-46.

Plaintiff does not defend either of the District Court's rationales.[5]  Instead, she makes two new arguments.

First, Plaintiff argues there is no evidence either of the two experts saw or relied upon the FBI Reports.  Answering Br. 45.  But Foster listed "FBI records" at the end of his report and testified he "reviewed and relied upon" those documents in forming his opinion.  Doc. 317 at 135:19-25; 150:16-17; *see also id.* at 150:18 (District Court agreeing Foster testified this).  Plaintiff's suggestion  that Foster was "mistaken[ ]" cannot overcome clear witness testimony.  Answering Br. 21; *see United States v. McDowell*, 348 F. App'x 455, 458 (11th Cir. 2009) (rejecting idea witness testified by "confusion" or "faulty memory" where there was "no[ ] evidence[ ]" of that).  If the *extent* to which Foster relied on the FBI Reports remains

---

[5]  To the extent Plaintiff's Rule 403 analysis in a different context relates to this issue, that is flawed for the reasons stated above.  *See supra* pp. 6-7.

unclear, that is only a direct consequence of the District Court refusing to allow further cross-examination.

As to Dr. Surloff, she testified she received a "report" from the "FBI" that revealed the sexual assault "was investigated." Doc. 319 at 86:12-17, 87:11, 87:23, 90:15. She testified her own report simply "repeated exactly what was said" in the FBI's "report." Quite so; the portions of her report summarizing Anggara's statements to the FBI are a largely-verbatim recitation of the FBI Reports. *Id.* at 90:1-4; Doc. 329-1 at 2-3 (Surloff Report); Doc. 111-2 at 3 (FBI Report); *compare* Doc. 312-26 at 7-10 (FBI Notes). Dr. Surloff's later inability on the stand to recall seeing the specific document is thus immaterial. *See, e.g.*, *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 182 F.3d 51, 55 (1st Cir. 1999) (irrelevant that an individual could not recall seeing a document without other accompanying evidence). In any event, Dr. Surloff's remark that she never saw the FBI Report was stricken from the record and should not be considered. Doc. 319 at 91:2-14; *see, e.g.*, *Selman v. Cobb Cnty. Sch. Dist.*, 449 F.3d 1320, 1332 (11th Cir. 2006) ("In deciding issues on appeal we consider only evidence that was part of the record before the district court.").

Second, Plaintiff argues that it is irrelevant if the experts relied on the Reports, because they did not adopt the Reports' conclusion that the encounter was consensual. Answering Br. 46. The cases she cites are off the mark. *See Jensen v. EXC, Inc.*, 82 F.4th 835, 848 (9th Cir. 2023); *Bryan v. John Bean Div. of FMC Corp.*,

15

566 F.2d 541, 545-547 (5th Cir. 1978).  They involve a "unique context"—the "unique situation of questioning one expert about the competing opinion of a non-testifying expert on the" "*very same* issue that is the subject of the testifying expert's opinion."  *Jensen*, 82 F.4th at 848 (emphasis in original).  That particular situation "raises special concerns that defy" the regular "rule" that "contrary opinion[s]" in otherwise-relied upon reports "may be freely elicited on cross-examination."  *Id.*

This is not that case.  Special Agent Andreasen's consent finding was not "the *very same* issue that is the subject of the testifying expert[s'] opinion[s]", those subjects being damages and foreseeability of harm.  *Id.*  The consent finding instead just was an important unfavorable fact—one Plaintiff's experts had ignored.  This puts it *precisely* within the cross-examination envisioned by the rules: cross-examination on "unfavorable . . . facts that are among those considered by the expert but that, for one reason or another, were discounted in formulating the expert's opinion."  *Id.* (citing Fed. R. Evid. 705, advis. comm. note (1973)).  This was classic impeachment—a simple question of why an expert would rely on a certain document for some of its facts but ignore the most relevant one.

The case also raises none of the "special concerns" that motivated *Jensen* and *Bryan*.  *Id.*  Those cases worried that the "opinions of . . . non-testifying experts" would be "brought before the jury without qualifying . . . them," with the jury thus having "no way of determining whether the opinions were credible."  *Id.* (internal

quotation marks omitted) (quoting *Bryan*, 566 F.2d at 546)).  But Special Agent Andreasen is not a "non-testifying expert"—she testified at length at trial.  *Id.* at 849; Doc. 320 at 26-60.  Second, the contrary opinions in *Jensen* and *Bryan* "lacked any independent guarantee of trustworthiness." *Id.* (quoting *Bryan,* 566 F.2d at 546). But the *Bryan* court specifically *approved* the situation here, where "an uninterested, expert third party prepared the report."  566 F.2d at 546.  And third, *Jensen* and *Bryan* held a "report's opinions—as opposed to its underlying factual data . . .— could only provide proper grist for cross-examination if an adequate foundation were laid to establish 'the substantive correctness' of those conclusions." *Jensen*, 82 F.4th at 850-851 (quoting *Bryan,* 566 F.2d at 546).  In those cases, "no such foundation appear[ed]." *Id.*  But because Special Agent Andreasen was able to testify, an "adequate foundation" could have been established.  *Id.*

Separately, Plaintiff fails to distinguish two cases.  *See* Answering Br. 47 (citing *Barrera v. E. I. Du Pont De Nemours & Co.*, 653 F.2d 915, 921 (5th Cir. 1981); *United States v. A & S Council Oil Co.*, 947 F.2d 1128, 1135 (4th Cir. 1991)). *Barrera* states that otherwise inadmissible evidence can come in for impeachment. *Barrera*, 653 F.2d at 921.  And Plaintiff fails to mention the key language of *A & S Council* that highlights exactly why the District Court was wrong to exclude the FBI Reports for impeachment purposes.  Rule 705 "is the cross-examiner's sword, and,

within very broad limits, he may wield it as he likes."  *A & S Council*, 947 F.2d at 1135.

## IV.    THE DISTRICT COURT MADE SERIOUS ERRORS IN ITS DAMAGES RULINGS.

### A.    The District Court Legally Erred In Denying A Mitigation Instruction.

The District Court made another pure legal error[6] when it failed to give a mitigation instruction for psychological, mental, or emotional damages.  The sole rationale was that the judge had never "seen" it in such cases.  Doc. 320 at 19. Plaintiff repeats the same.  Answering Br. 48-49.

That is wrong as a matter of black-letter law.  "[O]ne injured by the tort of another is not entitled to recover damages for *any* harm that [one] could have avoided by the use of reasonable effort or expenditure after the commission of the tort." Restatement (Second) of Torts § 918 (1979) (emphasis added).  As the word "any" suggests, courts regularly analyze mitigation defenses for psychological or emotional harms. *See, e.g.*, *Ornstein v. New York City Health & Hosps. Corp.*, 881

---

[6]  Plaintiff obfuscates the standard of review.  Answering Br. 29, 47-48.  The legal correctness of jury instructions—here, does mitigation apply to emotional damages?—is reviewed *de novo*.  *Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1233 (11th Cir. 2004).  And while the refusal to give a jury instruction is generally reviewed for abuse of discretion, when a court fails to give a correct statement of law on a matter of damages, that amounts to an abuse of discretion. *See, e.g.*, *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1129-30 (11th Cir. 1992).

N.E.2d 1187, 1193 (N.Y. 2008) ("a defendant who believes that a plaintiff has unreasonably failed to take steps to relieve emotional distress . . . can raise a failure to mitigate damages defense")[7]; *Carnival Cruise Lines, Inc. v. Goodin*, 535 So. 2d 98, 103 (Ala. 1988) (recognizing duty to mitigate psychological harms); *Pool v. City of Oakland*, 728 P.2d 1163, 1172 (Cal. 1986) (same); *see generally E.E.O.C. v. Fred Meyer Stores, Inc.*, 954 F. Supp. 2d 1104, 1114 (D. Or. 2013) (collecting cases).

To the extent Plaintiff argues that there has not been an admiralty case to have explicitly addressed this question, this benefits Carnival, not Plaintiff. When admiralty has no well-established rule, it draws from either state or general common law. *See generally* 1 T. Schoenbaum, Admiralty and Maritime Law § 4:4 (Nov. 2024 update). Both sources point in the same direction; both limit such damages.

Plaintiff's brief shows why denying the mitigation instruction was particularly problematic here. "[T]he harm of" sexual assault "can be primarily emotional" or psychological, Katharine K. Baker, *Gender and Emotion in Criminal Law*, 28 Harv. J. L. & Gender 447, 453 (2005)—and Plaintiff's "Testimony Regarding Plaintiff's Damages" section refers almost exclusively to such injuries. *See* Answering Br. 21-22. The failure to give a mitigation instruction thus was a failure to give the most relevant instruction on the most relevant damages.

---

[7] Plaintiff describes this as dicta, but it was purposeful language that reflects New York practice. *E.g.*, *Skaria v. State*, 442 N.Y.S.2d 838, 841-842 (N.Y. Ct. Cl. 1981).

Plaintiff next argues the facts. *Id.* at 50-51. But she does not dispute that she forewent mental health treatment for a year. Doc. 319 at 249-250. Nor does she dispute that the following year she saw a single therapist twice. *Id.* at 250. What Plaintiff calls "Zoom appointments" the year after that was a messaging app where Plaintiff typed written questions and got responses. *See id.* at 251; Answering Br. 50. All of this is in contrast to what Plaintiff's own expert testified she needed: to "see a psychiatrist twice a week." Doc. 319 at 65.

Plaintiff also argues that Carnival failed to send medical records that told her to seek counseling. Answering Br. 50. But Plaintiff makes no allegations she needed to be told that therapy was useful for sexual assault survivors. And while Plaintiff's appellate brief claims she spent $3000-4000 on therapists, *id.* at 51, her actual testimony states she spent that amount of money on therapists *or* doctors. Doc. 319 at 225-226.

But in all events, mitigation is not an all-or-nothing defense. *E.g.*, *Messer v. E.F. Hutton & Co.*, 833 F.2d 909, 921 (11th Cir. 1987) (reducing compensatory damages on mitigation grounds); *Gomez v. Am. Empress Ltd. P'ship*, 189 F.3d 473 (9th Cir. 1999) (unpublished) (approving reduction of psychological damages by 25% on mitigation grounds). When dealing with a verdict of this magnitude, even a mild adjustment might amount to millions of dollars. The scope of that reduction was a question the jury needed to decide.

20

**B.    The District Court Legally Erred In Awarding Prejudgment Interest.**

The District Court also committed legal error when it awarded prejudgment interest. A wide array of cases hold that prejudgment interest in admiralty law *cannot* be awarded by the court post-verdict when a case is tried by a jury. *See* Opening Br. 50-51 (citing First, Second, and Fifth Circuit cases).[8] Plaintiff cites no cases holding otherwise. She instead argues (at Ans. Br. 53) that one Fifth Circuit case is dicta, but it is not. The holding of *Havis v. Petroleum Helicopters, Inc.*, 664 F.2d 54 (5th Cir. 1981), and nearly all of its analysis, was that under federal law prejudgment interest is an issue for the jury. *Id.* at 55. The *Havis* panel also took the view that state law gave the plaintiff an alternative path to prejudgment interest in federal court, but that holding was later rejected by the Fifth Circuit. *Id.* at 55-56; *see also Wyatt v. Penrod Drilling Co.*, 735 F.2d 951, 955 & n.2 (5th Cir. 1984).

Like the District Court, Plaintiff instead opts to rely on two Eleventh Circuit decisions that did not address the issue. *See Reichert v. Chemical Carriers, Inc.*, 794 F.2d 1557 (11th Cir. 1986); *Lebron v. Royal Carribean Cruises, Ltd*., No. 20-14449, 2021 WL 2917265 (11th Cir. July 12, 2021). One of those is unreported. Both

---

[8] *See also Petersen v. Chesapeake & Ohio Ry. Co.*, 784 F.2d 732, 740 (6th Cir. 1986) ("Where a general maritime claim is tried to a jury, the grant or denial of prejudgment interest must be submitted to the jury"); *Glynn v. Roy Al Boat Mgmt. Corp.*, 57 F.3d 1495, 1505 (9th Cir. 1995) (agreeing with "[e]very other circuit that has considered the issue"), *abrogated on other grounds by Atl. Sounding Co. v. Townsend*, 557 U.S. 404 (2009).

*affirmed* a district court's decision not to award prejudgment interest, just on alternative grounds. *Reichert*, 794 F.2d at 1558; *Lebron*, 2021 WL 2917265 at *2. This is far too thin a reed to rest a theory that the Eleventh Circuit has affirmatively endorsed that prejudgment interest may be awarded by a judge after a jury trial. *See, e.g.*, *United States v. Campbell*, 491 F.3d 1306, 1312 n.5 (11th Cir. 2007) (declining to consider statements of a prior case that "may leave the impression" of a contrary result when a question was "not at issue"). Indeed, Carnival is aware of no other circuit to follow Plaintiff's theory. Were the Eleventh Circuit to affirm the judgment below, it would thus become the extreme outlier in a lopsided circuit split.

Nor is there some "harmless error" rule in play here. *See* Answering Br. 52 (arguing a jury would have reached "the same result"). Circuits are uniform that situations like this require reversal. *See, e.g., Newburgh Land & Dock Co. v. Texas Co.*, 227 F.2d 732, 735 (2d Cir. 1955) (Hand, J.); *Robinson v. Pocahontas, Inc.*, 477 F.2d 1048, 1053 (1st Cir. 1973); *Havis*, 664 F.2d at 55-56 (only remanding to consider potential state-law interest). For one thing, a judge simply does not have the authority to take the role of fact-finder away from the jury. "It is the federal law that . . . when the award of interest rests in discretion, it is the jury who must exercise it, and it follows that we may not remand the case to the judge, but that we must modify the judgment by striking out the award of interest, and direct judgment for the amount of the verdict only." *Newburgh*, 227 F.2d at 735 (Hand, J.). For another,

it is a matter of party presentation. Where plaintiff "did not request that the jury be instructed" on prejudgment interest, and where no evidence on it was introduced, "it would be inappropriate to remand this issue to the trial court." *Robinson*, 477 F.2d at 1053; *Havis*, 664 F.2d at 55-56. This Court should reverse the prejudgment interest award, with instructions to enter an amended judgment.

### C.    The District Court Abused Its Discretion In Refusing To Remit The Verdict.

The District Court's final error was in forgoing its last chance to course-correct when the jury awarded $10,000,000, an extraordinary award that even the District Court acknowledged was high. *See* Tab F at 35 (identifying it as the absolute top of the permissible range she was considering). The facts of this case counseled for a more restrained award, not a higher one. Opening Br. 52-54. Plaintiff's contrary arguments fall short.

First, Plaintiff notes that non-economic harms are difficult to quantify. Answering Br. 53-54. But "[a]s with any other damages award, awards for emotional distress can be excessive. There 'must be an upper limit' to every damages award." *Bell v. Williams*, 108 F.4th 809, 831 (9th Cir. 2024) (citation omitted). "Otherwise, if left unrestrained, compensatory damages awards" would "go beyond their compensatory function and turn punitive." *Id.* And while the District Court's ruling on remittitur is generally reviewed for abuse of discretion, "[l]ocating the upper limit" of permissible damages is ultimately "a question of law, not fact, and is

23

subject to appellate review." *Id.* (citing *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 435 (1996)). Courts therefore have not hesitated to enforce that "outer limit" on impermissible emotional damages. *See, e.g.*, *id.* at 830-835 (collecting cases); *Rustenhaven v. Am. Airlines, Inc.*, 320 F.3d 802, 807-809 (8th Cir. 2003).

Plaintiff then refers to clearly distinguishable cases which even the District Court explicitly rejected. Answering Br. 54-55; Tab F at 34-35; Doc. 362 at 9. One of them involved a priest repeatedly sexually abusing a child, drugging him, and trying to film the child in sexual acts with other children—and all of those horrors resulted in a damages award exactly the same as the award in this case. *John Doe No. 69 v. Father Neil J. Doherty*, Case No. 11-10986 CA 05 [Doc. 343-1]; American Association for Justice, *Sexual Abuse of Minor*, 48-MAR JTLATRIAL 10 (Mar. 2012) (Westlaw). Another involved a teacher grooming and sexually abusing a minor for years—resulting in an award four million dollars *lower* than the damages awarded in this case. *Doe v. Sch. Bd. of Miami-Dade Cnty.*, 624 F. Supp. 3d 1292, 1296, 1300-03 (S.D. Fla. 2022).[9] That these clearly-distinguished cases awarded similar or nearly half the damages to Plaintiff is significant support for the conclusion that the damages here are excessive. *Cf. Echeverry v. Jazz Casino Co.*,

---

[9] A third by Plaintiff is a $70 million award regarding the "violent rape" of an individual "where the victim was threatened with death." *Baca v. Island Girl, Ltd.*, No. CACE-16-003324 (Fla. Cir. Ct. 2018); Doc. 362 at 9. The District Court similarly rejected this award as not "a meaningful comparator." Doc. 362 at 9.

*L.L.C.,* 988 F.3d 221, 236 (5th Cir. 2021) (noting the Fifth Circuit rule that an award cannot be "150% of the highest inflation-adjusted recovery in an analogous, published decision"). Indeed, the award here is over five times higher than the only analogous case on record. *See Doe v. Celebrity Cruises*, No. 00-cv-02523, 2002 WL 34683586 (S.D. Fla. Nov. 22, 2002) ($1.6 million in inflation-adjusted dollars), *aff'd*, 394 F.3d 891 (11th Cir. 2004); Opening Br. 53-54.

And many factors here counseled for a lower damages award compared to similar cases. The offense did not have further aggravating characteristics. *Compare Celebrity Cruises, Inc.*, 394 F.3d at 898 (above-mentioned $1.6 million award, where assailant pushed victim to ground, bit her, shoved his fingers in her mouth to keep her quiet, and victim repeatedly cried to stop). Plaintiff undisputedly suffered from severe pre-existing psychological harms, including depression, psychosexual trauma, suicidal ideation, and PTSD. Opening Br. 52. By the time of trial, she was no longer "in pain", but had a happy and growing family and was hoping to "move forward." Doc. 319 at 224. She also failed to mitigate her psychological harms by declining to obtain treatment. Opening Br. 49, 52-53.

Finally, Plaintiff argues that Carnival did not proffer its own damages estimate. Answering Br. 54. But this Court has never held that any award is reasonable just because a defendant did not affirmatively capitulate to some arbitrary damages estimate. And the concern raised by Plaintiff's cited case, *Kerrivan v. R.J.*

*Reynolds Tobacco Co.*, involves a very different scenario: where one party gave a realistic "benchmark" to the jury and the other "declined to offer any guidance . . . at trial." 953 F.3d 1196, 1207 (11th Cir. 2020) (citation omitted). Plaintiff here offered a stratospheric damages request, far from any realistic "benchmark." Indeed, if anything, the sky-high demand created a psychologically-documented "anchoring effect" that encouraged the jury to award disproportionately high damages. Opening Br. 53 (citation omitted). And Plaintiff's primary expert on damages was vigorously cross-examined. *See* Doc. 319 at 40-155 (Dr. Surloff). The jury thus had plenty of substantive "guidance" on Carnival's views of damages. *See id.* at 74-145.

## CONCLUSION

For the foregoing reasons and those listed in the opening brief, the Court should vacate the judgment against Carnival and order a new trial on Plaintiff's claims for false imprisonment and sexual assault.

Alternatively, this Court should vacate the judgment and remand for a trial limited to damages or, at the very least, remand with instructions to remit the award and to eliminate prejudgment interest.

Respectfully submitted,

CURTIS J. MASE                  /s/ Catherine E. Stetson
WILLIAM R. SEITZ                CATHERINE E. STETSON
MASE SEITZ BRIGGS               KEENAN ROARTY
2601 South Bayshore Dr., Suite 800    HOGAN LOVELLS US LLP
Miami, FL 33133                 555 Thirteenth Street, N.W.
                                Washington, D.C. 20004
                                (202) 637-5491
                                cate.stetson@hoganlovells.com

*Counsel for Appellant Carnival Corporation*

Dated: April 28, 2025

27

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,498 words, exclusive of those items listed in Fed. R. App. P. 32(f).

2.      This document complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14-point font.

/s/ Catherine E. Stetson

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2025, I caused a copy of the foregoing to be served by electronic means via the Court's CM/ECF system on all counsel registered to receive electronic notices.

/s/ Catherine E. Stetson